15 N.J. Super. 440 (1951)
83 A.2d 620
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SAMUEL SHIREN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 1951.
Decided October 1, 1951.
*441 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Paul T. Huckin argued the cause for the respondent (Mr. Francis V.D. Lloyd, attorney).
Mr. George F. Losche argued the cause for the defendant-appellant (Mr. David A. Gelber, attorney).
The opinion of the court was delivered by EASTWOOD, J.A.D.
Defendant, Samuel Shiren, appeals from convictions on two indictments charging him with (1) assault and battery and (2) death by reckless driving of an automobile.
Shiren, a construction engineer, was supervising a project in River Edge, New Jersey. On the morning of June 24, 1950, he complained of a toothache. During the middle of the morning, at the suggestion of a labor foreman on the *442 project and in an effort to alleviate the pain, he got a pint bottle of whiskey, took a drink, held it in his mouth for a short time and then spat it out. At noon, defendant and the labor foreman and some workmen from the project went to a nearby bar and grill for lunch where they each had two glasses of beer with their lunch. They returned to the job at approximately 12:40. At approximately 1:30 P.M., Shiren, not feeling well, at the suggestion of the foreman left the job. Proceeding along Route 4 in his automobile he allegedly felt faint, blacked out completely and awakened to see bicycles and boys "and that was the end of it." As a result of the accident, Donald Johnson was killed and Richard Harris was injured.
The State tried its case on the theory that the defendant was intoxicated. Numerous State's witnesses testified that in their opinion Shiren was under the influence of intoxicating liquor. Dr. Eisenstein, the examining physician, was not called by the State, but testified as a witness for the defense that he examined defendant at police headquarters immediately after the accident and found defendant sober. The testimony respecting defendant's sobriety was conflicting and the court properly submitted that issue to the jury.
By way of defense, the defendant contended that he was ill, not intoxicated, and that his illness caused him to "black out." In support thereof, the defendant offered Dr. Abraham S. Effron, a qualified neurologist and psychiatrist, who testified that he examined Shiren on October 20, 1950, and November 4, 1950, for treatment of his condition; that he obtained a history from him and performed an electro-encephalogram on him. An electro-encephalogram, the doctor explained, discloses any abnormalities in brain wave pattern and ordinarily will reveal whether one has suffered a stroke depending upon the part of the brain involved. The court, over objection, refused to permit Dr. Effron to testify as to the results of the electro-encephalogram, particularly with respect to the existence of a disease of the brain at the time of the accident. The defendant contends that this action of *443 the trial court was erroneous and that it improperly and prejudicially prevented the defendant from proving whether his condition was due to brain damage.
The defendant argues that (1) the verdict is against the weight of the evidence and (2) there was error in excluding the testimony of the injury to defendant's brain and the effect thereof.
Let us consider the grounds of appeal in the inverse order of their presentation.
As a general proposition it may be said that any legally competent evidence which, when taken alone or in connection with other evidence, affords reasonable inferences upon the matter in issue, tends to prove or disprove a material issue or to defeat the rights asserted by one or the other of the parties, and sheds any light upon or touches the issues in such a way as to enable the jury to draw a logical inference with respect to the principal fact in issue, is relevant and admissible. 20 Am. Jur., sec. 247, pp. 240, 241. Testimony was adduced which indicated that defendant, prior to the accident was suffering from high blood pressure. Evidence tending to show the effect, or possible effect, of that disease upon the defendant at the time of the accident would, where not excluded for remoteness or conjecture, have been admissible to explain his condition or to support his allegation of having "blacked out."
"While the trial court may, and in some instances, should, reject evidence which, although relevant or deemed to be relevant, appears too remote to be material, yet of course there are innumerable instances in which particular evidence has been held not inadmissible on this ground; and ordinarily remoteness affects the weight, rather than the admissibility, of evidence. The question of excluding evidence because of remoteness rests largely in the sound discretion of the trial judge. Remoteness is a matter of degree. The term is one which has regard to factors other than mere lapse of time; and it is said that, while time may be a practically controlling feature in some situations, yet comparatively few generalizations based upon lapse of time alone can be made safely; that evidence which is relevant, as directly tending to prove a fact in issue, is not incompetent as immaterial merely because of remoteness in point of time; and that remoteness depends to a large extent on the nature of the *444 case. Even where the evidence is very remote, the question must be determined by the circumstances."
16 C.J., sec. 1087, pp. 561, 562, 22 C.J.S., Criminal Law, § 638. State v. Kelly, 77 Conn. 266, 269, 58 A. 705, 706. In State v. Cerciello, 86 N.J.L. 309, 311 (E. & A. 1914), it was held:
"Remoteness in time is the objection now urged, but that fact furnishes an argument for consideration by the jury in weighing the evidence, but it does not always preclude its admissibility as evidence. 21 Cyc. 892; State v. Hoyt, 47 Conn. 518, 538; Redd v. State, 68 Ala. 492; Everett v. State, 62 Ga. 65."
Cf. Parisi v. Carl W. Bush Co., 4 N.J. Super. 472 (App. Div. 1949).
With respect to the admission of expert opinions concerning the relation to the incident in question, of facts found at a subsequent date, it was also stated in the Cerciello case:
"In principle its admission as legal evidence is based upon the theory that the evolution in practical affairs of life, whereby the progressive and scientific tendencies of the age are manifest in every other department of human endeavor, cannot be ignored in legal procedure, but that the law in its efforts to enforce justice by demonstrating a fact in issue, will allow evidence of those scientific processes, which are the work of educated and skillful men in their various departments and apply them to the demonstration of a fact, leaving the weight and effect to be given to the effort and its results entirely to the consideration of the jury. Steph. Dig. Ev. 267; 2 Best Ev. 514."
Cf. State v. Blaime, 5 N.J. Misc. 633, 636 (Sup. Ct. 1927).
Of course, we are unable to say whether Dr. Effron's testimony would or would not reveal a physical impairment or condition at the time of the accident that might have a bearing upon the defendant's alleged "black out." However, in view of the sharply disputed question of his sobriety, the defendant was entitled to have the benefit of Dr. Effron's testimony so that the jury might determine whether the loss of control of his car was causally related to some physical impairment or the result of intoxication. State v. Cerciello, *445 supra. We are satisfied that the exclusion of Dr. Effron's testimony was erroneous and affected defendant's substantial rights. Rule 1:2-19 (a), as amended, Rule 4:2-6. State v. Bulach, 10 N.J. Super. 107 (App. Div. 1950).
Our determination concerning the exclusion of Dr. Effron's testimony eliminates the necessity for a discussion of the first ground of appeal.
The judgments of conviction are reversed.