252 P.2d 781

STATE v. WARREN.

No. 1034.

Supreme Court of Arizona.

Jan. 31, 1953.

124

Herbert Mallamo, Phoenix, Leslie Parry, Phoenix, of counsel, for appellant.

Fred O. Wilson, Atty. Gen., Robert K. Park, Asst. Atty. Gen., for appellee.

PHELPS, Justice.

This is an appeal from a judgment convicting the defendant of operating an automobile while under the influence of intoxicating liquor with prior conviction and from the order denying defendant's motion for a mistrial or in the alternative, for a new trial, or in arrest of judgment.

The facts are that on the evening of September 20, 1951, the defendant had been celebrating a birthday and according to his testimony, had drunk four split bottles of beer (two more than is customary) at the Top Hat on the corner of Central Avenue and Roosevelt Street; that he thereafter started home and traveled along West Roosevelt Street until he reached 19th Avenue at which point he failed to make the turn south and his car ran into an irrigation ditch about 12 feet west of the west line of 19th Avenue and turned over on its side in the ditch, striking a water

hydrant located between 19th Avenue and the irrigation ditch. The accident occurred at approximately 12:45 a. m., to 1:00 a. m. in the morning of September 21, 1951.

A Mr. Kugel, Sun Valley patrolman, was the first person at the scene of the accident but his presence was unobtainable at the trial of the cause. The defendant was next seen by Mr. Arthur Tobiason, juvenile officer, at the intersection of West Van Buren and 19th Avenue. He was then at the middle of the intersection, staggering and placing himself in danger of oncoming traffic when Mr. Tobiason succeeded in getting him out of danger. He took him back to the scene of the accident and found Mr. Paul Blubaum, police officer of the city, at the scene. Mr. Tobiason turned the defendant over to him. Defendant was afterwards picked up by a police car operated by Melvin Weil and William R. Gragg. All of these witnesses who testified at the trial stated that the defendant was unsteady on his feet, that his tongue was thick, that his breath smelled heavily of alcohol and one witness definitely stated that he was drunk. The others testified to the same facts upon which the opinion of intoxication rests. One of the witnesses said he was unable to tell them how old he was or upon what date he was born although he was then celebrating his birthday. Exhibit B in Evidence shows the following notations made by officer Blubaum when he booked defendant at the police station: Odor of alcohol, strong; face flushed; clothes orderly; mental state, talkative; eyes bloodshot, dialated, glassy; walking, swaying; speech fair; effects of alcohol, obvious; ability to drive, greatly impaired.

Defendant was taken to the police station where he was subjected to a drunkometer test which showed a alcoholic content by weight in the blood of .23% plus.

Counsel for defendant has presented to the court a great number of assignments of error as grounds for reversing the case, many of which have no merit whatever. In short, the only assignment which appears to the court to have any merit is the alleged manner in which the drunkometer test was conducted. Testimony of the witnesses concerning the actions and conduct of the defendant is amply sufficient to have warranted the conviction of drunk driving without the aid of the drunkometer test. Counsel even contends that there is no proof that defendant drove the car. Defendant admitted to all the officers that he was driving the car and admitted on the witness stand that he drove the car from Central to 19th Avenue and that he was driving it when it ran into the irrigation ditch at Roosevelt and 19th Avenue. The admission that he was driving the car is not circumstantial evidence as claimed by counsel for defendant. It is direct and positive evidence.

One of defendant's main objections to the drunkometer test is that the chemicals used in conducting the test were not under

the exclusive control of one person nor had they been so safeguarded that any particular person could say with certainty that their contents had not been changed after being placed there by Mr. Roy Jones, city bacteriologist and graduate chemist.

The drunkometer test used by the police department is an invention of Dr. R. N. Harger, professor of biochemistry and toxicology at the Indiana University School of Medicine and is in use in a number of states in the Union. Its use has been upheld in practically all of the states where it is in use, if properly used. The following are some of the cases upholding its constitutionality and the conviction of the defendant based upon the test: Toms v. State, Okl.Cr. App., 239 P.2d 812; McKay v. State, Tex. Cr.App., 235 S.W.2d 173; People v. Bobczyk, 343 Ill.App. 504, 99 N.E.2d 567. Dr. Harger testified in the latter case and stated that he had conducted thousands of breath tests and had found that by means of the breath method he can accurately predict the percentage of alcohol in the blood and that all persons would be under the influence of alcohol when the alcohol blood content is above .15% by weight. In the case of Toms v. State, supra, Dr. Beddo who was qualified by counsel as a physician and chemical analyst, testified that the breathometer and urine test would show the alcohol and blood content, if any, in an individual's blood stream. He further testified that the R. N. Harger drunko-

meter test had been approved by the American Medical Association, the Commissioner of National Safety, the Federal Bureau of Investigation, by many courts, and by 12 of the states by statutes. The testimony of these experts was quoted with approval by the respective appellate courts in holding that the breath tests are admissible.

The test is made by having the subject blow up an ordinary rubber balloon. The breath impounded in the balloon is run through tubes in the drunkometer, one of which contains 10 cc of 56% sulphuric acid and another 1 cc of potassium permanganate. The record in this case does not disclose the strength of the potassium permanganate but Dr. Harger in his explanation of the alcohol drunkometer found in the American Medical Journal, Vol. 110, p. 780, states that this solution is 20th normal potassium permanganate solution which is prepared by dissolving 1.58 grams of chemically pure potassium permanganate in enough water to make one liter. There is a tube in use in the machine which is known as the ascarite tube by which the percentage of alcohol by weight in the blood is determined. This is ascertained by computing the difference between the weight of the ascarite tube before the experiment and its weight thereafter. In this particular instance the difference between the weight as testified to by the officer conducting the test was .0134. This, when calculated according to the formula

explained by the witness Roy Jones, chemist, was found to be .23% by weight, of alcohol in the blood.

■ With reference to the instrument used in weighing this tube the witness Roy Jones testified that it was not strictly a pair of scales but was what would be termed as balances, that the instrument therefore needed no Federal or state inspection, that it had to be balanced each time before it was used. He further testified that he placed the sulphuric acid and potassium permanganate in separate bottles once a week and placed them in the testing room under lock and key, that at least once a week, and more often if necessary after placing them there, he made a recheck of the chemicals to ascertain if any change in their content had been made subsequent to his placing them in the locker; that he had never found any change in the content of the bottles placed there by him. He testified that he made a recheck of these particular bottles from which the chemicals were taken for this test subsequent to such test and that there was no change in their contents. He stated that a number of police officers had taken courses in the manner of conducting this test and that several of them did in fact conduct the test and that they all had access to the cabinet in which the bottles were kept. It would be better, of course, if these tests were assigned to one person who has exclusive access to and control of the chemicals but where, as in this case, the chemicals were rechecked after the test to ascertain if any change in contents had been made and none found, it was not error to admit the testimony relating thereto as tending to establish the admissibility of the drunkometer test in evidence.

The witness Roy Jones, chemist, testified that in previous cases he had checked the results of the test made by the drunkometer with a chemical analysis made by him of the blood of the subject and that they "compared favorably".

■■ We have heretofore held in State v. Harold, 74 Ariz. 210, 246 P.2d 178, that the act in question is constitutional and it is not necessary to go into that matter again. Section 66-156, A.C.A.1952 Supp., of the act provides that the presence of a .15% or more by weight of alcohol content in the defendant's blood raises the presumption that he was under the influence of intoxicating liquor. Defendant also contends that the test was not voluntarily taken by him. The trial court determined that question by letting it go to the jury. It would be a proper proceeding where the evidence bearing thereon is in conflict to submit to the jury under proper instructions, the question of whether defendant voluntarily submitted to the test. Wagner v. State, 43 Ariz. 560, 33 P.2d 602. Here the defendant admitted that he consented to blowing up the balloon because he had heard they would make him take the test. He did not testify to what he had heard and there is nothing in the testimony in

this case concerning the methods employed by the police which could justify a fear of bodily harm to him if he persisted in his refusal to take such test. In any event in the absence of a request that the question be submitted to the jury, and for an instruction thereon, the court's action did not constitute reversible error.

The only assignment of error presented by counsel for the defense which has any merit is subdivision (d) of assignment of error No. 1 to the effect that:

"The test was not properly controlled throughout its various steps and the chain of evidence of the conduct of the test is incomplete."

We have already stated it to be our view that the sulphuric acid and potassium permanganate having been prepared by the witness Roy Jones, graduate chemist and bacteriologist for the city, and rechecked by him following the test and finding that the contents were the same as when he placed them in the respective bottles, is sufficient to establish control of the chemicals at the time the test was made. How, when and by whom the initial weight of the ascarite tube was ascertained has not been so well established. But before we undertake to determine its control in connection with the test we deem it necessary to ascertain what the record discloses in the nature of objections to the admissibility of the drunkometer test, based upon lack of control over the ascarite tube.

The first objection by defense counsel was made and argued in the absence of the jury when the state attempted to introduce evidence concerning the drunkometer test made by the witness Van Dorn. The objection was based "upon the ground that before the drunkometer test was admissible in evidence it must be shown that it was taken willingly by defendant." In his argument to the court on this point counsel said:

"* * * Now unless the state can show that absolutely no compulsion, no coercion was used in obtaining this information, then upon the law in the Rochin case it is not admissible and no information should be allowed to go to the jury on that fact situation. * * *

* * * * * *

"We submit, if the Court please, that that is the issue in this case."

The same ground was later given in objecting to the use of the balloon in capturing defendant's breath.

When the envelope containing the ascarite tube was offered in evidence defense counsel objected to it "on the grounds that it isn't material to any of the issues connected with this case." The witness Roble who weighed the ascarite tube after the test was made, was asked what the tube weighed at the time he took it out of the envelope. Counsel for defendant objected to its admissibility "on the same grounds

stated out of the presence of the jury (to the effect that the test was not voluntarily taken by defendant), that it is prejudicial and immaterial and it is not shown, or there is no showing here as to the manner in which this evidence was obtained."

"The Court: The record may show the objection. I take it it is upon the grounds heretofore stated.

"Mr. Mallamo: Yes."

The grounds "heretofore stated" were that the test was not voluntarily taken by defendant.

The witness Jones who testified for the state was asked if he knew if this drunk-ometer was in use any place other than Phoenix and if it had been endorsed by authoritative bodies, objection to which was sustained upon the ground that it was im-material. Counsel for defense now com-plains in this court that such showing was not made by the state and that it was neces-sary as a foundation for its admission in evidence. Such complaint, of course, will not be considered under the circumstances. Jones was further asked if in his opinion the drunkometer was a reliable machine for establishing the alcohol content of the blood. Counsel objected upon the ground that it called for a conclusion and that the witness was not qualified, notwith-standing the fact that the witness had tes-tified that he had previously compared the results of the drunkometer test with blood analysis made by him taken from the same persons and that the comparison was favor-able. The objection was sustained.

Jones was then asked by the state a hypothetical question based squarely upon the weight of the ascarite tube before and after the test and basing his answer upon the difference in such weights if he could determine the percentage of alcohol by weight in the blood, to which counsel for defendant objected

"* * * upon the grounds that it is based upon the hypothetical question that is not complete in itself for the man to answer the question; in other words, for this to be an accurate meas-urement all of the instruments in-volved must be controlled, and there is no evidence in this case that all of these items were controlled items so that an accurate answer to this ques-tion could be given. * * *

"The Court: Can you point out wherein the hypothetical question con-tains facts that are not—

"Mr. Mallamo: If I may have the man on voir dire.

"The Court: Very well."
Counsel for defense asked no questions about the control of the ascarite tube but devoted his voir dire examination ex-clusively to the manner in which the sul-phuric acid and potassium permanganate were transferred from the bottles in which they were placed by Jones into the reaction tubes of the drunkometer.

130

Defendant's motion for an instructed verdict at the close of the state's case was based

"* * * upon the ground that there is no testimony in this case to the effect that the defendant was driving under the influence of intoxicating liquor. That is the peculiar fact as I see it. Disregarding the manner in which the test here was taken, there is no evidence even that the man was driving the automobile, and the drunk driving case should be dismissed for the same reason that the reckless driving case was dismissed. * * *"

We have heretofore disposed of this contention.

At the close of all the evidence defendant's counsel moved to strike all the testimony with respect to the taking of the drunkometer test because

"* * * it now appears * * * that the same was taken without his (defendant's) consent and against his will and under threat of force and was taken in an illegal manner contrary to the specific sections of our Constitution, being Section 2, Article II, Section 10, Article II, and Section 4, Article II of the Arizona Constitution and contrary to Section [Amendment] 5 and Section [Amendment] 14 of the United States Constitution; that such has been condemned by our United States Supreme Court and it is inadmissible on that ground."

These references are to the due process clauses of the state and Federal Constitutions and the protection of persons charged with criminal offenses against being required to give evidence against themselves.

It will be seen therefore from the objections made by counsel for defendant during the course of the trial that he considered the issue in the case to be whether the defendant voluntarily submitted to the drunkometer test, and that the question of the control over the ascarite tube at all times from the time it was placed in the locker in the test room until the test was completed was not seriously considered by counsel for defense during the trial, otherwise some objection would have been predicated upon that ground. An examination of the entire record fails to disclose any such objection. This court will not consider questions that are raised here for the first time.

Having decided the other questions involved, we conclude that no fundamental error was committed by the court. No instructions were requested by counsel for defense on any question of law involved in the case. When asked by the court if he had any such instructions his answer was in the negative.

Judgment of the lower court is affirmed.

STANFORD, C. J., and LA PRADE, UDALL, and WINDES, JJ., concurring.