170 Cal.App.2d Supp. 817 (1959)
THE PEOPLE, Respondent,
v.
DOMENIC CONTERNO, Appellant.
California Court of Appeals. 
Apr. 30, 1959.
 Morris Lavine for Appellant.
 Roger Arnebergh, City Attorney (Los Angeles), Philip E. Grey, Assistant City Attorney, and William E. Doran, Deputy City Attorney, for Respondent.
 DAVID, J.
 The jury's verdict declared defendant Conterno guilty of violation of California Vehicle Code, section 502: "It is unlawful for any person who is under the influence of intoxicating liquor to drive a vehicle upon any highway ..."; and upon a second count of the complaint, found that he was guilty of operating a vehicle upon a public highway [170 Cal.App.2d Supp. 822] without having in his possession and displaying upon demand a valid license, etc., in contravention of Vehicle Code, section 274, subdivision (b).
 The judgment of the court was that the defendant on the first count should pay a fine in the sum of $250, suspended on condition that $125 of the fine be paid or that 25 days be served, and on condition that defendant should not drive without a valid license; with the usual alternatives of imprisonment if the fine should not be paid; and upon the second count, that he should pay a fine in the sum of ten dollars, payment suspended. The defendant appeals from this judgment.
 Although the insufficiency of the evidence to support the judgment is urged, particularly in reference to the second count of the complaint, the appellant has not brought the evidence before us, either by settled statement or reporter's transcript. The sufficiency of the evidence to support the verdict and the judgment is therefore not in issue, and we must affirm the judgment in relation to the second count. We therefore turn our attention to the first count.
 When arrested, the defendant was requested by the arresting officer to give a breath sample for the intoximeter test, and refused. The settled statement on appeal states: "The defendant testified that he refused an intoximeter test on the ground that the giving of the test was a violation of his constitutional rights. The defendant objected on constitutional grounds to testifying to any facts regarding the giving of or refusal to take the intoximeter test. The objection was overruled."
 Appellant claims in the statement on appeal that: "The court erred in admitting evidence that the defendant stood on his constitutional rights in refusing to take a balloon test and in using the fact of refusal to incriminate himself as a basis for conviction."
 Upon this appeal, defendant Conterno asserts that the trial court also committed prejudicial error in its refusal to instruct the jury that:
 "(No. 1) You are instructed that no inference of guilt attaches to the defendant by reason of his refusal to take any so-called sobriety tests."
 "(No. 3) You are instructed that a person has a constitutional right to refuse to take any tests at the request of officers arresting him and no inference of wrongdoing may be had by you from such refusal, if one occurred." [170 Cal.App.2d Supp. 823]
 The court did instruct:
 "(No. 4) You are instructed you may not speculate as to what might have been the result of a sobriety test, if one had been taken."
 "(No. 8) You are instructed that the defendant did not have to take any sobriety tests."
 No other instructions bearing upon the subject matter were offered or given.
 Which constitutional rights he had in mind when he refused the test or made his objection at time of trial are not specified. We will assume that these are California Constitution, article I, sections 13 and 19, as urged in the briefs. California Constitution, article I, section 13, provides in part: "No person shall be ... compelled, in any criminal case, to be a witness against himself; ... but in any criminal case, whether the defendant testifies or not, his failure to explain or deny by his testimony any evidence or facts in the case against him may be commented upon by the court and by counsel, and may be considered by the court or the jury."
 [1] Such right of comment upon, and consideration of, a defendant's failure to explain or deny evidence in the case against him does not violate the Fifth or Fourteenth Amendments. (Adamson v. California (1947), 332 U.S. 46 [67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223]; aff'g. People v. Adamson (1946), 27 Cal.2d 478 [165 P.2d 3]).
 California Constitution, article I, section 19, provides in part: "The right of the people to be secure in their persons ... against unreasonable seizures and searches, shall not be violated; ..."
 [2] We take judicial notice that the intoximeter or breath analysis test for alcoholic intoxication is frequently called by laymen "a balloon test," due to the use of a small rubber balloon to collect the breath sample.
 [3] To determine the quantity of blood alcohol, samples of the bodily fluids such as blood, urine, saliva, or the human breath are analyzed. (See People v. Kovacik (1954), 205 Misc. 275 [128 N.Y.S.2d 492, 500 et seq.] describing such tests). [fn. 1] [170 Cal.App.2d Supp. 824]
 [4] The scientific validity of such tests, when properly administered, is generally conceded. (People v. Duroncelay (1957), 48 Cal.2d 766, 772 [312 P.2d 690]; cf. Lawrence v. City of Los Angeles (1942), 53 Cal.App.2d 6, 8 [127 P.2d 931]). [5] Until the quantitative analysis is made and the results have been interpreted by an expert, it cannot be known whether the person from whom the breath or other sample was taken was or was not under the influence of intoxicating liquor, within the terms of Vehicle Code, section 502. [6] "Nor should it be ignored that a test of this kind may serve to exonerate, as well as to convict." (People v. Duroncelay, supra (1957), 48 Cal.2d 766, 772 [312 P.2d 690]). Such testing may determine that an apparent impairment of a person's physical faculties is not due to alcohol, and that other medical aid is needed urgently; as in case of insulin shock, concussion of the brain from trauma, and the like. (Cf. State of New Jersey v. Shiren (1951), 15 N.J.Super. 440 [83 A.2d 620], electro- encephalogram, to prove that "blackout" was not due to intoxication). [7] Both for the protection of the citizen who needs medical attention and the protection of the police officer against claims of false arrest, physical examinations to determine the cause of a citizen's apparent lack of physical coordination and control are important. (Cf. circumstances of Wood v. Cox (1935), 10 Cal.App.2d 652 [52 P.2d 565]). [fn. 2] [170 Cal.App.2d Supp. 825]
 [8] The test itself does not declare guilt nor innocence, nor the fact of intoxication, which still is to be determined by the testimony of experts interpreting the test. (People v. Tucker (1948), 88 Cal.App.2d 333, 339 [198 P.2d 941]; People ex rel. Meehan v. Spears (1952), 201 Misc. 666 [114 N.Y.S.2d 869, 870]). The test and the evidence founded upon it may protect the innocent (Toms v. State of Oklahoma, supra, 95 Okla.Crim. 60 [239 P.2d 812, 817]) and the reports reflect occasions where it has done so. (As in State of Idaho v. Ayres (1949), 70 Idaho 18 [211 P.2d 142]; cf. Macon Busses Inc. v. Dashiell (1945), 73 Ga.App. 108 [35 S.E.2d 666, 670]).
 [9] Where the test is given the results are to be weighed and considered with all other evidence by the jury (People v. Tucker, supra, 88 Cal.App.2d 333, 339 [198 P.2d 941]), and even where a state has adopted certain alcoholic blood content figures as the basis for presumptions as to intoxication, such presumptions are not conclusive. (Trimble v. City of New York (1949), 275 App.Div. 169 [88 N.Y.S.2d 324]).
 I.
 [10] The trial court properly refused to give defendant's proposed instruction Number 3, which declared in part: "You are instructed that a person has a constitutional right to refuse to take any tests at the request of officers arresting him. ..."
 A. There is no constitutional privilege under California Constitution, article I, section 13.
 [11] It has long been the law in this state that only testimonial compulsion is within the purview of the privilege against self-incrimination under California Constitution, article I, section 13. (People v. Trujillo (1948), 32 Cal.2d 105, 112-113 [194 P.2d 681], cert. den. [335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 426]; People v. Robarge (1953), 41 Cal.2d 628, 632-633 [262 P.2d 14]; People v. Chapman (1957), 151 Cal.App. [170 Cal.App.2d Supp. 826] 2d 59, 63 [311 P.2d 190]. Handwriting exemplars: People v. Harper (1953), 115 Cal.App.2d 776, 779 [252 P.2d 950]; People v. Smith (1952), 113 Cal.App.2d 416, 419 [248 P.2d 444]; but cf. People v. Wignall (1932), 125 Cal.App. 465 [13 P.2d 995]. Consult Wigmore, Evidence [3d ed. 1940] 2250, 2251, 2265; note, 171 A.L.R. 1144).
 [12] Evidence produced as a result of a physical examination of a prisoner to determine his condition, made without his consent, does not violate constitutional provisions against self-incrimination. (People v. One 1941 Mercury Sedan (1946), 74 Cal.App.2d 199 [168 P.2d 443]; Territory of Hawaii v. Chung Nung (1912), 21 Hawaii 214, 219; Skidmore v. State of Nevada (1939), 59 Nev. 320 [92 P.2d 979, 982]; O'Brien v. State of Indiana (1890), 125 Ind. 38 [25 N.E. 137, 139, 9 L.R.A. 323]).
 [13] Expert testimony, based upon the analysis of bodily fluids or breath made from samples taken without the consent of the defendant, is admissible in evidence. The constitutional privilege afforded by California Constitution, article I, section 13, supplemented by Penal Code, sections 688, 1323 and 1323.5, is not violated. (People v. Duroncelay, supra (1957), 48 Cal.2d 766 [312 P.2d 690]; People v. Haeussler (1953), 41 Cal.2d 252 [260 P.2d 8], cert. den. Haeussler v. People, 347 U.S. 931 [74 S.Ct. 533, 98 L.Ed. 1082]; People v. Tucker (1948), 88 Cal.App.2d 333, 343-344 [198 P.2d 941]; People v. Lewis (1957), 152 Cal.App.2d 824, 830 [313 P.2d 972]; cf. People v. One 1941 Mercury Sedan, supra (1946), 74 Cal.App.2d 199, 202-214 [168 P.2d 443]; accord, State of Idaho v. Bock, supra (1958), 80 Idaho 296 [328 P.2d 1065, 1067-1068], reviewing many authorities; Breithaupt v. Abram (1957), 352 U.S. 432, 435 [77 S.Ct. 408, 1 L.Ed.2d 448, 450], affirming 58 N.M. 385 [271 P.2d 827]; State of Arizona v. Berg (1953), 76 Ariz. 96 [259 P.2d 261]; State of Oregon v. Cram (1945), 176 Ore. 577 [160 P.2d 283, 164 A.L.R. 952]; State of Wisconsin v. Kroening (1957), 274 Wis. 266 [79 N.W.2d 810, 80 N.W.2d 816]).
 In Breithaupt v. Abram, supra (1957), 352 U.S. 432, 435 [77 S.Ct. 408, 1 L.Ed.2d 448], aff'g. same case, 58 N.M. 385 [271 P.2d 827], it was held there was no violation of due process under the Fourteenth Amendment in receiving in evidence an analysis of defendant's blood, taken from his veins while unconscious.
 Statutes, such as Penal Code, sections 688 and 1323, defining who is a competent witness, and excluding testimony of defendants [170 Cal.App.2d Supp. 827] not testifying with their own consent, have no relevancy here. The physical state of the defendant, and not his testimonial utterances, is concerned. (Cf. State of Idaho v. Bock, supra (1958), 80 Idaho 296 [328 P.2d 1065, 1071].)
 [14] We now conclude that a defendant under lawful arrest does not have any constitutional right under California Constitution, article I, section 13, to decline such a test, properly administered; and that no federal constitutional right is violated (People v. Haeussler, supra (1953), 41 Cal.2d 252 [260 P.2d 8], cert. den. 347 U.S. 931 [74 S.Ct. 533, 98 L.Ed. 1082]; accord, Breithaupt v. Abram, supra (1957), 352 U.S. 432, 435 [77 S.Ct. 408, 1 L.Ed.2d 448], aff'g. (same title) 58 N.M. 385 [271 P.2d 827], holding that there is no violation of the Fourteenth Amendment in receiving evidence of a test made with a blood sample taken from defendant while unconscious).
 [15] We think there is no substantial difference between obtaining a specimen of blood or breath from an accused under ordinary circumstances, and obtaining fingerprints or personal property, the possession of which is a pertinent issue in the charge against him (cf. Alexander v. State of Oklahoma, supra (1956), ___ Okla.Crim. ___ [305 P.2d 572, 584]), or requiring handwriting exemplars to be given, where the requirement for writing approaches even more closely the characteristic of the protected oral or written testimonial disclosures (cf. People v. Harper, supra (1953), 115 Cal.App.2d 776, 779 [252 P.2d 950], and other cases cited, supra, on this point).
 [16a] B. The taking of a sample of blood or breath for such a test, incident to a lawful arrest, does not constitute an unlawful search or seizure, under California Constitution, article I, section 19. Chief Justice Gibson, speaking for the court in People v. Duroncelay, supra (1957), 48 Cal.2d 766, at page 772 [312 P.2d 690, 694] states in respect to the more stringent taking of blood for such tests: "The extraction of blood for testing purposes, is, of course, an experience which, every day, many undergo without hardship or ill effects. When this fact, together with the scientific reliability of blood alcohol tests in establishing guilt or innocence, is considered in the light of the imperative public interest involved, the taking of a sample for such a test without consent cannot be regarded as an unreasonable search and seizure where, as here, the extraction is made in a medically approved manner and is incident to the lawful arrest of one who is reasonably believed to have violated section 501 of the Vehicle Code"; and also, [170 Cal.App.2d Supp. 828] at page 771 [p. 693 P.2d]. [17] "Where there are reasonable grounds for an arrest, a reasonable search of a person and the area under his control to obtain evidence against him is justified as an incident to arrest, and the search is not unlawful merely because it precedes, rather than follows, the arrest." [16b] So it is, when the violation is of Vehicle Code, section 502 (or 501) and the search is the gathering of breath in the balloon of an intoximeter in a reasonable manner. (Cf. State of Delaware v. Smith (1952), 47 Del. 334 [91 A.2d 188, 193], as to intoximeter; cf. People v. Morgan (1956), 146 Cal.App.2d 722 [304 P.2d 138]). (Accord: State of Arizona v. Berg, supra (1953), 76 Ariz. 96 [259 P.2d 261, 263]; State of Idaho v. Bock, supra (1958), 80 Idaho 296 [328 P.2d 1065]; Alexander v. State of Oklahoma, supra (1956), ___ Okla. Crim. ___ [305 P.2d 572]).
 In People v. One 1941 Mercury Sedan, supra (1946), 74 Cal.App.2d 199, 203-214 [168 P.2d 443], it was held that material evidence secured by use of a stomach pump, where any apparent acquiescence was forced by the circumstances, was not barred by the California constitutional provisions. A finger probe of the rectum of a prisoner by a doctor, resulting in the forcible ejection of a rubber container holding narcotics, has been held not to be in violation of the prisoner's constitutional rights under California Constitution, article I, section 13 (People v. Woods (1956), 139 Cal.App.2d 515, 516-525 [293 P.2d 901]).
 In State of Arizona v. Berg (1953), 76 Ariz. 96 [259 P.2d 261], it appears that force was used to obtain a breath sample. At page 263, the court stated that the results of the test nevertheless were admissible, where the breath sample was forcibly taken over defendant's objection, if the force is used in capturing the exhaled breath after it passes the lips and nose of the defendant. In State of North Carolina v. Willard (1954), 241 N.C. 259 [84 S.E.2d 899, 902], it was held that the fact that the blood sample was taken by a police chemist whom defendant thought to be a doctor was immaterial, since physical facts concerning one under arrest discovered by compulsion are admissible in evidence.
 [18] We conclude that it was error to instruct that the defendant did not have to take any sobriety tests, but this was obviously not prejudicial to him.
 [19] Since the privilege against self-incrimination is not involved, the officer administering the test need not inform the defendant that the result may be used against him. (Heath [170 Cal.App.2d Supp. 829] v. State of Texas (1952), 156 Tex.Crim. 563 [244 S.W.2d 815, 816].)
 [20] C. The making of such tests without defendant's consent does not violate either the Fourth or Fifth Amendment to the United States Constitution. (Adamson v. California, supra (1947), 332 U.S. 46 [67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223]; Breithaupt v. Abram, supra (1957), 352 U.S. 432 [77 S.Ct. 408, 1 L.Ed.2d 448]; State of Arizona v. Berg, supra (1953), 76 Ariz. 96 [259 P.2d 261, 266].) The Fifth Amendment does not extend to the use of defendant's body as real or physical evidence. (United States v. Nesmith (D.C., D. of C., 1954), 121 F.Supp. 758, 762, urine supplied for use in blood alcohol test at direction of police officer; State of South Carolina v. Smith (1956), 230 S.C. 164 [94 S.E.2d 886].)
 [21] D. In making physical tests, it is elementary to due process that any compulsion used does not shock the civilized conscience by its excess. (Rochin v. California (1951), 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396], reversing People v. Rochin (1950), 101 Cal.App.2d 140 [225 P.2d 1, 913].)
 Compulsory testing, as such as an incident to lawful arrest, is not in conflict with Rochin v. California, supra (1951), 342 U.S. 165 [72 S.Ct. 205], deciding that brutal compulsion may be a denial of due process. In Breithaupt v. Abram, supra (1957), 352 U.S. 432 [77 S.Ct. 408, 1 L.Ed.2d 448], wherein the taking of blood without consent for the purpose of such a test was concerned, the Rochin case is distinguished and explained. [22] Even if compulsion is used, admission in evidence of the results of the test does not deny due process of law, unless the physical means used are violent and brutal, shocking and revolting to the civilized conscience; or unless the defendant is so terrorized that to admit the evidence would make mockery and pretense of fair trial. This is the interpretation of the Rochin case by the California courts. (People v. Kiss (1954), 125 Cal.App.2d 138, 142 [269 P.2d 924], citing People v. Kendall (1952), 111 Cal.App.2d 204, 215 [244 P.2d 418]; People v. Speaks (1957), 156 Cal.App. 2d 25, 41 [319 P.2d 709]; People v. Hardin (1955), 138 Cal.App.2d 169 [291 P.2d 193]; People v. Martinez (1954), 130 Cal.App.2d 54 [278 P.2d 26]. Accord: State of Arizona v. Berg, supra (1953), 76 Ariz. 96 [259 P.2d 261, 266]; Alexander v. State of Oklahoma, supra (1956), ___ Okla.Crim. [170 Cal.App.2d Supp. 830] ___ [305 P.2d 572, 582, 585]; State of Delaware v. Smith, supra (1952), 47 Del. 334 [91 A.2d 188]; City of Barron v. Covey (1955), 271 Wis. 10 [72 N.W.2d 387, 389].) That some of the California cases were decided before the California Supreme Court adopted the rule against admission of evidence illegally obtained does not detract from their evaluation of Rochin v. California. As indicated by the authorities considered in this opinion, the requirement that a defendant take the intoximeter test is not illegal, where incident to an otherwise lawful arrest.
 [23] Thus, though a defendant testifies that he took the test because he was afraid that if he refused he would be made to take it, this is no bar to reception of the results in evidence. (State of Arizona v. Warren (1953), 75 Ariz. 123 [252 P.2d 781].)
 [24] We conclude the motion to bar receipt of evidence on the subject of Conterno's refusal to take the test was properly denied. In other similar cases, a motion to suppress the evidence at the outset of the trial has been denied, since there is no denial of any constitutional right. (Cf. United States v. Nesmith, supra (D.C., D. of C., 1954), 121 F.Supp. 758; Alexander v. State of Oklahoma, supra (1956), ___ Okla.Crim ___ [305 P.2d 572]; People ex rel. Meehan v. Spears, supra (1952), 201 Misc. 666 [114 N.Y.S.2d 869]; stating that the test does not declare guilt nor innocence, which still is to be determined on the entire testimony.)
 II.
 [25a] It cannot be said that the refusal to give defendant's proposed instructions 1 and 3 was prejudicial error.
 No claim has been made or supported that the evidence received upon the trial was not sufficient to support the judgment, apart from consideration of the inferences to be drawn, if any, from defendant's refusal to take the intoximeter test.
 In Grunewald v. United States (1957), 353 U.S. 391, 424 [77 S.Ct. 963, 1 L.Ed.2d 931, 954, 62 A.L.R.2d 1344, 1368], the court held "under the circumstances of this case (italics supplied) it was prejudicial error for the trial judge to permit cross-examination of petitioner on his plea of the Fifth Amendment privilege before the grand jury," because the probative value of the issue of the witness' credibility was so negligible as to be far outweighed by its possible impermissible impact on the jury.
 Under California Constitution, article I, section 13, such [170 Cal.App.2d Supp. 831] impact is not "impermissible" by the express terms of the section; and the question of probative value, as indicated by People v. Simmons (1946), 28 Cal.2d 699, 713 [172 P.2d 18], is to be resolved in the first instance by the trial judge, upon all the circumstances of the case. We cannot say, in the absence of an evidentiary transcript or statement of the evidence below, that any inference of guilt was permitted to arise, as contrasted to the permissible inferences of fact. Whatever words or conduct the witness uses to invoke the privilege (see Quinn v. United States (1955), 349 U.S. 155, 164 [75 S.Ct. 668, 99 L.Ed. 964, 51 A.L.R.2d 1157), the witness has thereby admitted some fact is true. That fact, by definition, is one which tends to incriminate him. In this case, it is not the defendant's privileged testimony given at some former proceeding which is being used against him, but his unprivileged conduct, which is a fact. Such inferences as may arise as an admission, standing alone, are insufficient for conviction. There must be some proof of the commission of the crime, prima facie, established by other evidence, before any evidence as to refusal to take the intoximeter test becomes admissible. (People v. Cobb (1955), 45 Cal.2d 158, 161 [287 P.2d 752].)
 [26] We have held previously that the fact of refusal to take the test is admissible in evidence, without violation of any constitutional right of a defendant, and that there may be comment upon the refusal (People v. McGinnis (1953), 123 Cal.App.2d Supp. 945, 946 [267 P.2d 458]. Accord: State of Idaho v. Bock, supra (1958), 80 Idaho 296 [328 P.2d 1065, 1071], listing authorities in accord; State of South Carolina v. Smith, supra (1956), 230 S.C. 164 [94 S.E.2d 886]; Gardner v. Commonwealth of Virginia (1954), 195 Va. 945 [81 S.E.2d 614, 618]; State of Iowa v. Benson (1941), 230 Iowa 1168 [300 N.W. 275, 277].)
 [27] In any case the defendant is entitled to explain why he declined to take the intoximeter test. (People v. Harrington (1955), 138 Cal.App.2d Supp. 902, 906 [291 P.2d 584].) He did. The jury was entitled to weigh his credibility as to the explanation, as in the case of any other evidence.
 [25b] Subject to these comments, it is clear no prejudicial error was shown to be committed in refusing a categorical instruction, "that no inference of guilt attaches to the defendant [Conterno] by reason of his refusal to take any so-called sobriety tests." The instruction would be proper if [170 Cal.App.2d Supp. 832] there was no other prima facie evidence of intoxication in the case except such a refusal. We cannot say from the record that there was not such other evidence.
 Nor does the record disclose that defendant at the time he was requested to take the test declared that he was not guilty of driving while under the influence of intoxicating liquor, within the rule restricting inferences where there is such an unequivocal declaration. (People v. Wignall, supra (1932), 125 Cal.App.2d 465 [13 P.2d 995].) By refusing the test, he in effect is refusing to produce evidence which would bear materially on the condition for which he was arrested.
 [28] Under California Constitution, article I, section 13, whether or not a defendant takes the stand, the court and jury have the right to consider a defendant's failure to explain or deny any evidence or facts in the case against him. The constitutional provision thus makes applicable to criminal cases the established rule that failure to produce evidence in the power of a party to produce, material to the facts in issue, permits the inference that this evidence would be adverse. Thus, in the face of other prima facie evidence of his intoxication, his refusal to take the test, in the absence of an explanation legally sufficient or satisfactory to the jury, may be considered by the jury as tending to indicate the truth of the other evidence in the case upon the subject of his intoxication, and as indicating among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable. (People v. Adamson, supra (1946), 27 Cal.2d 478, 488, 489 [165 P.2d 3].) [29] It is not the law that the failure to deny or explain incriminating testimony is an admission of its truth. It is merely a circumstance to be considered by the jury tending to indicate the truth of the culpatory evidence not denied or explained. (People v. Cuevas (1957), 148 Cal.App.2d 331, 335 [306 P.2d 510].)
 [30] Thus, it is clear that any inference arising from the refusal of a defendant to submit to such a test may not be used to "supply a lacuna in the prosecution's proof." (People v. Peters (1957), 149 Cal.App.2d 94, 99 [308 P.2d 42].)
 In People v. Ashley (1954), 42 Cal.2d 246, 268-269 [267 P.2d 271], cert. den. 348 U.S. 900 [75 S.Ct. 222, 99 L.Ed. 707], the failure of defendant to testify was properly urged as corroborative of the prima facie case made by the prosecution, though a failure to testify would not supply a lacuna in the prosecution's proof.
 [25c] In this case, the defendant voluntarily took the stand. [170 Cal.App.2d Supp. 833] He therefore was a competent witness. (Pen. Code, 1323.) Thus, he opened the door for questions. The record does not indicate who asked the question in response to which "The defendant testified that he refused an intoximeter test on the ground that the giving of the test was a violation of his constitutional rights," and "objected on constitutional grounds to testifying to any facts regarding the giving of or refusal to take the intoximeter test." While it is established that the defendant is not called upon to "explain or deny by his testimony any evidence in the facts against him" until those facts have been established prima facie in the trial itself, since until then, there is no right of comment (People v. Talle (1952), 111 Cal.App.2d 650, 664 [245 P.2d 633]), no such ground of objection has been raised, and it must be assumed there was such a prima facie case. It likewise is established that on cross-examination, he can only be examined upon those matters to which he testified in chief. (Pen. Code, 1323. No such ground of objection has been raised, so far as the record shows, and therefore it cannot be considered. (People v. Wignall, supra (1932), 125 Cal.App. 465, 470-471 [13 P.2d 995].)
 We have carefully studied People v. Snyder (1958), 50 Cal.2d 190 [324 P.2d 1], and People v. Calhoun (1958), 50 Cal.2d 137 [323 P.2d 427], and find their ultimate interpretation in the provisions of Pen. Code, 1323.5, and People v. Keelin (1955), 136 Cal.App.2d 860, 881 [289 P.2d 520, 56 A.L.R.2d 355], respecting the incompetency of testimony given before a grand jury under the compulsion of a subpoena. In People v. Calhoun, supra, at page 148, the court pointed out that the privilege of comment under the terms of California Constitution, article I, section 13, was not involved.
 Since there is no constitutional privilege relieving a defendant from the requirement that such a test be taken, the matters here presented resolve themselves into a matter of the competency of evidence that he refused to take it. It is not the refusal to take the test that raises an inference, per se. It is, that the "facts in the case against him" such as a prima facie case of intoxication call for denials or explanations and that the failure to deny them or explain them may be commented upon and considered by the court and jury. (Cal. Const., art. I, 13). When a defendant takes the stand and makes a general denial of the crime charged, the permissible scope of cross-examination is very wide. (People v. Watson (1956), 46 [170 Cal.App.2d Supp. 834] Cal.2d 818, 832 [299 P.2d 243].) There is nothing in the record to show that this was exceeded, in asking concerning the intoximeter test.
 In People v. Simmons, supra (1946), 28 Cal.2d 699 [172 P.2d 18], it is indicated (p. 715) that an accusation of crime does call for a reply, even from a person under arrest. Whether or not an inference arises from testimonial silence, induced by arrest, fear, pain, physical suffering, advice of counsel, admonition as to silence, warning against self-incrimination, a belief that silence will serve his best interests, or other physical or mental pressure, involves consideration of all the circumstances. It is indicated in discussion (p. 716) that a policy of silence induced by the testimonial privilege against self-incrimination is not inconsistent with innocence; a view which is formalized by People v. Calhoun, supra (1958), 50 Cal.2d 137, 147 [323 P.2d 427], which states "no implication of guilt can be drawn from a defendant's relying on the constitutional guarantee" of the state or federal Constitution, or the provisions of Penal Code, sections 688, 1323, and 1323.5.
 Since, in this case, such constitutional guaranties and code sections relating to the defendant's testimonial declarations were inapplicable, the question still remains as to the effect to be given defendant's assigned reason for refusal to take the intoximeter test.
 This falls, we believe, within the more general considerations set forth in People v. Simmons, supra (1946), 28 Cal.2d 699 [172 P.2d 18]. Under California Constitution, article I, section 13, the defendant has undertaken to explain some of the facts in the case against him, by stating his reason (however legally unfounded) for not taking the test. Having taken the stand, he cannot omit to explain any incriminating circumstances without inviting comment and consideration of that circumstance. (Caminetti v. United States (1917), 242 U.S. 470 [37 S.Ct. 192, 61 L.Ed. 442].)
 Without any further testimony before us, we cannot say that the trial court "indulged in too broad a discretion in allowing admission of such evidence in the first instance." We are satisfied that when evidence of such a refusal has been admitted, it calls for careful instructions to the jury as to the use that they may make of it. (People v. Adamson, supra (1946), 27 Cal.2d 478 [165 P.2d 3].)
 In People v. Starrett (1959), CR A 3953 (unreported), this court approved an instruction based upon People v. McGinnis, supra, 123 Cal.App.2d Supp. 945, to the effect: "You are instructed [170 Cal.App.2d Supp. 835] that in a case where a defendant is accused of violating section 502 of the Vehicle Code it is permissible to prove that the defendant was offered a balloon [intoximeter] test after he or she has been made aware of the nature of the test and its effect. The fact that such test is refused under such circumstances is not sufficient standing alone and by itself to establish the guilt of the defendant but is a fact which, if proven, may be considered by you in the light of all other proven facts in deciding the question of guilt or innocence. Whether or not such conduct shows a consciousness of guilt and the significance to be attached to such a circumstance are matters for your determination." This terminology might be improved, but the essence of the instruction we believe correctly states the law.
 In the instant cases, from the objection made to taking the test, it is reasonable to infer that the defendant knew the nature of the test, and what it was designed to show.
 No right of the defendant was prejudiced when the court gave instruction Number 4 as modified: "You are instructed you may not speculate as to what might have been the result of a sobriety test, if one had been taken." There is a wide difference between naked speculation, and rationally supported inferences.
 If there was no competent evidence in the case to support the element of being under the influence of intoxicating liquor, other than such a refusal, the evidence of such refusal should not be received. We cannot say from the judgment roll and statement on appeal that this was the case here, nor after the verdict can we presume it.
 [31] Even if the rulings of the court as to the effect of refusal to take the intoximeter test were erroneous, the mandatory provisions of California Constitution, article VI, section 4 1/2, would require affirmance of the judgment. There is no showing that the evidence was so conflicting or uncertain as to create a doubt of the guilt of the defendant, exclusive of the testimony in question, so that such admission resulted in a miscarriage of justice. (People v. Simmons, supra (1946), 28 Cal. 2d 699 [172 P.2d 18].) [32] The burden of showing unfairness and a miscarriage of justice rests upon the appellant, and it must be sustained not as a matter of speculation but as a demonstrable reality. (People v. Crooker (1956), 47 Cal.2d 348, 353 [303 P.2d 753].) This, defendant has not done.
 The decision of this cause would have been easier, and possibly would have been more adequate from standpoint of [170 Cal.App.2d Supp. 836] the defendant, had default not been made in the steps to bring a proper record before this court.
 The judgment is affirmed.
 Swain, J., concurred.
 BISHOP, J.
 I concur, both in the judgment and in the opinion which supports it, for it satisfactorily establishes these propositions:
 (1) If it was error to permit inquiry about defendant's refusal to take an intoximeter test, from the incomplete and sketchy record of oral proceedings before us we cannot say either that the error was not invited by the defendant or that it was prejudicial.
 (2) It is not error to prove that a defendant, arrested, refused to permit the taking of an intoximeter test, for (a) such refusal, if not satisfactorily explained, may be taken by the jury as a circumstance to be considered, as it weighs the other evidence in the case; (b) the constitutional question involved, is not based upon the federal, but upon the state Constitution; and (c) our constitutional prohibition against compelling a person to be a witness against himself, prevents "testimonial compulsion," but is not a constitutional right to refuse to have evidence taken as to one's breath, blood, fingerprints, condition of eyes, and like bodily characteristics.
 Consult also: State of Iowa v. Koenig (1949), 240 Iowa 592 [36 N.W.2d 765, 767]; People v. Coppock (1954), 206 Misc. 89 [133 N.Y.S.2d 174, 177], discussing the test and the adoption of the New York statute establishing the evidentiary effect of such tests, and providing for revocation of operator's licenses for refusal to take the test; People v. Kovacik, supra (1954), 205 Misc. 275 [128 N.Y.S.2d 492, 500 et seq.] describing the tests and setting out the New York statute; State v. Warren (1953), 75 Ariz. 123 [252 P.2d 781, 782-783], describing the Harger test; Toms v. State of Oklahoma (1952), 95 Okla. Crim. 60 [239 P.2d 812]; Natwick v. Moyer (1945), 177 Ore. 486 [163 P.2d 936, 939], holding the test is scientifically established; accord, State of Utah v. McQuilkin (1948), 113 Utah 268 [193 P.2d 433, 436]; State of North Carolina v. Moore (1956), 245 N.C. 158 [95 S.E.2d 548, 550-551]; State of Maine v. Libby (1957), 153 Me. 1 [133 A.2d 877, 881]; Stacy v. State of Arkansas (1957), ___ Ark. ___ [306 S.W.2d 852, 855], holding such test generally approved judicially. Cf. Smith v. Mott (Fla., 1958), 100 So.2d 173, 176, results of test as official or business records; also Nichols v. McCoy (1951), 38 Cal.2d 447, 448-449 [240 P.2d 569], test results covered by business record statute.
 People v. Kovacik, supra, 205 Misc. 275 [128 N.Y.S.2d 492, 500], under the uniform statute as adopted in New York, discussing the tests; Mattingly v. Eisenberg (1955), 79 Ariz. 135 [285 P.2d 174], citing Lawrence v. City of Los Angeles (1942), 53 Cal.App.2d 6 [127 P.2d 931]; Alexander v. State of Oklahoma (1956), ___ Okla. Crim. ___ [305 P.2d 572, 585-588].
 Applying the uniform statute as adopted in other states: cf. State of Idaho v. Bock (1958), 80 Idaho 296 [328 P.2d 1065]; Schacht v. State of Nebraska (1951), 154 Neb. 858 [50 N.W.2d 78]; State of Maine v. Chabot (1957), 152 Me. 348 [129 A.2d 559]; consult footnote 3, Breithaupt v. Abram (1957), 352 U.S. 432 [77 S.Ct. 408, 1 L.Ed.2d 448].
 If a motorist suspected of intoxication refuses the blood test for alcohol, his license may be revoked, under the New York statute. Combes v. Kelly (1956), 152 N.Y.S.2d 934).
NOTES
[fn. 1] 1. The methods and characteristics of such tests are matters of judicial notice. (McKay v. State of Texas (1951), 155 Tex. Crim. 416 [235 S.W.2d 173, 174]; cf. Cortese v. Cortese (1950), 10 N.J. Super. 152 [76 A.2d 717], blood test). It has become established that intoxication is not proportional to the amount of alcohol consumed, but to the rate and amount of its absorption into the blood. (McKay v. State of Texas, supra, 235 S.W.2d 173, 174-175). The percentage of such absorption fixes the degree of loss of physical control which characterizes intoxication. (Lawrence v. City of Los Angeles (1942), 53 Cal.App.2d 6 [127 P.2d 931]).
[fn. 2] 2. By adoption of the Uniform Vehicle Code provisions, some 23 or more states have officially adopted the results of such tests as prima facie evidence in traffic cases, and the adoption of such legislation is now before the California Legislature.