## STATE v. McQUILKIN.

No. 7068.  Decided April 28, 1948.  (193 P. 2d 433.)

See 23 C. J. S. Criminal Law, Sec. 1323. Degree or nature of intoxication for purposes of statute or ordinance making it a criminal offense to operate an automobile while in that condition, see note, 142 A. L. R. 555. See, also, 5 Am. Jur. 925.

Rehearing denied June 29, 1948.

*Gustin & Richards,* of Salt Lake City, for appellant.

*Brigham E. Roberts,* Dist. Atty., of Salt Lake City, *Grover A. Giles,* Atty. Gen. and *C. N. Ottoson,* Asst. Atty. Gen., for respondent.

McDONOUGH, Chief Justice.

Defendant was convicted of involuntary manslaughter, and he appeals.

The decedent, Marie Whitehead, was riding in an automobile driven by her husband on the evening of November 29, 1946. The car was proceeding south on State street in Salt Lake County in the lane of traffic next to the center of the street. As said car reached a point near Social Hall Avenue, which is about a block north of an underpass hereinafter mentioned, Mr. Whitehead turned to the left after making a signal for a left turn, in order to turn into said Social Hall Avenue. He had driven a little too far to the south to turn directly into such avenue, so he turned east and drove to the east edge of the paved portion of State street into a sort of alcove, a few feet south of the south line of said avenue. After coming to a stop, the car rolled back 2 or 3 feet, and was stopped in that position when Mr. Whitehead asked his wife if any car was approaching. The rear wheels of his car were then about

4½ feet west of the east edge of the concrete pavement and in such position extended over about one-half the width of the most easterly lane of the 4 lanes for travel. The front end of the car was several feet off the pavement.

Before Mrs. Whitehead could turn her head to look, a car driven northward by defendant crashed into the right side of the Whitehead car, the point of impact being at about the rear door. The Whitehead car swung around completely, coming to rest facing west about 15 feet north of a telephone pole. Defendant's car proceeded about 39 feet northward after the crash, and then turned sharply to the east onto the extreme northerly side of Social Hall avenue. Skid marks indicated the respective paths of these cars from the place of impact. Mrs. Whitehead was thrown from her husband's car onto the street as a result of the impact, and she died of her injuries shortly after the collision.

The State produced witnesses who testified in substance as follows: Two of them followed defendant's car for about 10 miles to the point of impact. They saw defendant's car weave along the highway and swerve from one side of the highway to the other at several places between the locality where they first saw the car and the place at which the collision occurred. Several southward bound cars stopped when defendant's car swerved onto the wrong side of the highway. As it reached an underpass about 525 feet south of the scene of the accident, defendant's car was traveling about 30 miles per hour. At this point the car veered to the right and scraped the east concrete wall of the underpass, as evidenced by sparks observed as the right side of his car came in contact with the cement wall. Then the car turned to the left, partly into the next lane of traffic and then back toward the right just prior to the collision. Both witnesses in the automobile which followed defendant's car testified that there was no car nor any other object between defendant's car and the Whitehead car to obstruct the view, nor to prevent defendant's car from turning slightly to the left to avoid crashing into the Whitehead car which was standing still at the moment of impact.

The intersection was well lighted, and the Whitehead car was clearly visible from the underpass to these witnesses.

One witness opened the door to defendant's car after the cars came to rest after the crash, and a bottle partly filled with wine fell out. A witness for the State testified that he smelled alcohol on the breath of defendant, and saw him walk unsteadily. The witness noted that defendant's conversation was incoherent, and when defendant was asked whether there was a blanket in his car, he made some irresponsive remarks. Several witnesses who testified to the actions and movements of defendant, the odor of alcohol, his unsteady gait immediately following the collision, and his utterances, expressed the opinion that he was intoxicated. An analysis of a urine sample voluntarily given by defendant, disclosed the presence of alcohol, which qualified experts testified was sufficient to render the subject intoxicated. Further reference will be made hereinafter to this opinion testimony.

Defendant testified in his own behalf. He said he was not aware of going from one side of the street to the other. He further stated that he drank only a small quantity of wine, that he was not intoxicated, and that in all of his driving experience he was never in better condition. He offered an explanation for his unsteady movements following the accident by saying that he was rendered unconscious from the collision; that he suffered some cuts on his head, and that he was dazed from injuries even after he recovered consciousness. He also testified that as he went through the underpass a car was passing him on the left; that the Whitehead car suddenly came across his lane of travel; that he did not see the car until he was about 12 feet from it; that he had no time to stop before the collision, and no room to turn out to avoid the accident.

Appellant's assignments of error may be summarized as follows: (1) That the evidence is insufficient to support the verdict. (2) That the court misdirected the jury particularly by injecting into the case a theory of concurrent

negligence. (3) That the court admitted incompentent opinion testimony.

Appellant's argument in support of the first noted assignment is to the effect that Whitehead was guilty of negligence in turning left across the path of northbound traffic, and that he was likewise negligent in permitting his car to roll back onto the paved portion of State street, and that reasonable minds cannot differ upon the proposition that under the facts in evidence Whitehead's conduct was the sole proximate cause of the collision. In support of the contention that Whitehead was negligent in turning left across the east port of the highway, appellant relies on *Cederloff* v. *Whited,* 110 Utah 45, 169 P. 2d 777. The facts in the *Cederloff* case are not comparable with those in the instant case, as the following excerpt from 169 P. 2d 778 reveals:

"* * * Defendant turned his car from a direct course in the highway into the lane of traffic intended for vehicles traveling in the opposite direction at a time when plaintiff's car was approaching in such close proximity that the collision occurred as soon as the front end of defendant's car had reached a few feet into plaintiff's lane of traffic. Had plaintiff's car run into the rear end of defendant's car after the front end thereof had entirely crossed plaintiff's course of travel, there might have been some question whether the turn could be made with reasonable safety, but under the facts in this case it is clear that as a matter of law the turn could not be made with reasonable safety, and the defendant was guilty of negligence. * * *"

In the instant case, since the evidence reveals that the Whitehead car had crossed completely or almost completely over the two lanes for northbound traffic and had made a short backward movement before the impact occurred, it cannot be said as a matter of law that the left turn was not made in the exercise of due care.

But it is earnestly contended that Whitehead was negligent in permitting his car to roll back onto the paved portion of the highway, and that in the light of the evidence that after such movement Mrs. Whitehead had only time to turn her head to see whether or not a car

was approaching, before the collision occurred, Whitehead's conduct in this respect was the sole proximate cause of the collision and the death of Mrs. Whitehead. If the evidence were such as to compel a finding on the part of the jury that the backward movement of the Whithead car was such an act in relation to its previous movement and position that defendant could not have avoided the collision had he been in complete control of his faculties, the rule stated in *Cederloff* v. *Whited,* supra, would clearly be applicable. However, the jury was not compelled to find that such was the situation in this case. The backward movement of the Whitehead car was not a sudden, speedy intrusion into the path of defendant's car. The testimony is to the effect that the car "rolled back" about two or three feet after coming to a stop. The jury could find that defendant veered partly into the second northbound traffic lane at a point between the underpass and the place of impact, and that he then turned to the right just prior to the moment of impact. There is evidence from which it could be found that defendant had ample opportunity prior to the collision, had he made proper observation of the Whitehead car, to either stop or to continue into the second lane for northbound traffic. It is to be noted in this connection that the evidence indicates that when at the place of impact, the rear wheels of the Whitehead car were 4½ feet west of the east edge of the State street pavement, and the rear end of such car extended 18 inches to 2 feet farther to the west. Since the backward movement was only two or three feet, as one witness testified, the rear portion of the Whitehead car must have been on the pavement when it first came to a stop before the short rearward movement. Under all of the evidence, the jury might have found that by reason of his intoxicated condition, defendant failed to react in a normal manner to the situation which confronted him, and that his conduct was a responsible cause of the collision and resulting death. See *State* v. *Capps,* 111 Utah 7, 176 P. 2d 873.

The second proposition is that the court misdirected the jury. Counsel for appellant argue that the trial court injected into the case by an erroneous instruction, a theory of concurrent negligence not warranted by evidence of either party. The instruction was not prejudicial. ■ Defendant's testimony was to the effect that negligence on the part of the driver of the Whitehead car was the sole proximate cause of the collision. His version of the crucial issue was that he was suddenly confronted with a situation of peril which he could not avoid. Had the jury accepted such testimony as fact, a verdict of acquittal would have been required in accordance with a specific instruction of the court to that effect. The court committed no error in calling to the attention of the jury the rule that if a person is guilty of conduct which results in injury to another, proof that some third party has also been guilty of some wrongdoing which contributed to the same result, does not establish a defense; because evaluation of the evidence as a whole may well have justified a conclusion that both defendant and the witness Whitehead were guilty of negligence.

Appellant contends that Instruction No. 8 required the acquittal of defendant. Such contention lacks merit. The instruction was to the effect that if the operator of the Whitehead car drove it across or backed it into the path of defendant's car in such proximity to the moving car of defendant so that such operator's conduct ■ in such respect was the sole proximate cause of death of the victim, or, if the evidence created a reasonable doubt in the minds of the jurors as to the element of proximate cause, the defendant was entitled to an acquittal. Clearly under the evidence the jury could reasonably find facts both as to negligence on the part of Whitehead and as to causation contrary to the hypothesis of the instruction.

The third contention is that the court admitted incompetent evidence by permitting opinion testimony on intoxication from a chemist based upon a urinalysis. The State obtained the urine sample voluntarily from defend-

ant within an hour after the collision. The sample was analyzed by the State chemist. A city chemist testified as to his experience in conducting experiments and investigations with respect to alcohol in the human body. The contention that the witness not being licensed to practice medicine was not competent to testify in answer to a hypothetical question, is not well-founded. The record as to his qualification as an expert as to the matters testified to by him, supports the ruling of the court permitting him to express his opinion on the issue of intoxication of defendant.

.The witness was not trying to diagnose defendant's condition, but to express an opinion based upon experience in the process of experiments and investigations as to intoxication when a certain percentage of alcohol is found in the blood or in the urine. We find no abuse of discretion on the part of the trial court in permitting the witness to testify in view of the fact that the court first carefully probed his qualifications and experience in the field of his opinion testimony. The opinion expressed was not based upon conjecture, but was a deduction from experience and experimental work.

The judgment of the trial court is affirmed.

PRATT, WADE, WOLFE and LATIMER, JJ., concur.