333 P.2d 1075

**STATE of Utah, Plaintiff and Respondent,**

v.

**Levert L. TWITCHELL, Defendant and Appellant.**

No. 8810.

Supreme Court of Utah.

Jan. 15, 1959.

Glen S. Hatch, A. M. Marsden, Salt Lake City, for appellant.

E. R. Callister, Atty. Gen., Gary L. Theurer, Asst. Atty. Gen., for respondent.

WORTHEN, Justice.

Defendant appeals from a conviction by a jury of the crime of automobile homicide in violation of 76–30–7.4, U.C.A. 1953 (1957 Pocket Supplement) which was passed by the 1957 Legislature as Chapter 165, Laws of Utah, 1957.

The act, including the title, is as follows:

"An Act Relating To The Penal Code; Providing For The Offense Of Causing Death Through The Operation Of A Motor Vehicle While Intoxicated And Providing Punishment In The State Penitentiary For A Period Of From One To Ten Years.

"Be it enacted by the Legislature of the State of Utah:

"Section 76–30–7.4, Utah Code Annotated 1953, is enacted to read:

"Any person, while under the influence of intoxicating liquor or narcotic drugs, or who is under the influence of any other drug to a degree which renders him incapable of safely driving a vehicle, who causes the death of another by operating or driving any automobile, motorcycle or other vehicle in a reckless, negligent or careless manner, or with a wanton or reckless disregard of human life or safety, shall be deemed guilty of a felony and upon conviction shall be punished by imprisonment in the state penitentiary for a period of not less than one year nor

more than ten years. A death under this section, is one which occurs as a proximate result of the accident within a year and a day, after the day of the accident."

■ Defendant contends that the statute in question is unconstitutional in that it violates the constitutional provisions against special legislation;[1] that it violates the constitutional provision against deprivation of liberty without due process of law;[2] and that it violates a further constitutional provision [3] because it contains more than one subject and the subject is not clearly expressed in the title of the act.

Defendant claims that the act in question unlawfully discriminates against those who by mere chance while driving an automobile under the influence of drugs or intoxicants happen to fatally injure another. He states that the act does not make driving under the influence a felony, but only places the felony penalties on those who are unluckier than the other drivers under the influence. He contends that this classification by the legislature, this singling out of drunken and drugged drivers who kill is unconstitutional. He also contends that the legislature has substituted the status of being under the influence of drugs or liquor for criminal intent formerly required before one could be convicted of a felony. He also contends that under the new statute the prosecutor has a choice of whether to charge automobile homicide, a felony, or involuntary manslaughter, a misdemeanor, on identical facts. The definition of involuntary manslaughter was not amended expressly by the passage of the automobile homicide act and he contends that the two statutes existing side by side allow the prosecutor to make discriminations against individuals and deprive citizens of equal protection of the laws.

There is slight difference between the statute in question and a statute prohibiting the use of a loaded gun resulting in the death of a human being, yet the individual who happens to kill another, absent any criminal intent, cannot contend that the classification is unrealistic.

If "A" shoots at "B" intending to kill him but misses "B" and hits "C," he cannot excuse his act by showing that he did not intend to hit or kill "C."

■■ So far as the question of the present statute being unlawfully discriminatory is concerned, this court has held that all that is required is that the statute apply equally to all members in the class and that as long as there is a valid reason for a classification by the legislature, their determination of the class will not be disturbed.[4]

1. Article VI, Sec. 26.
2. Article I, Sec. 7.
3. Article VI, Sec. 23.
4. State v. Kallas, 97 Utah 492, 94 P.2d 414.

Neither, so far as we are aware, is there any constitutional prohibition against legislative substitution of an admittedly unlawful status for the required criminal intent in a felony prosecution. For example, criminal intent is not necessary to support a conviction of unlawful cohabitation.[5] Nor are we impressed by the argument that the statute applies only to those who happen to kill another person on the highways, although we recognize that whether a person injured in an accident lives or dies is largely a matter of chance into which many factors enter; this same argument could be made in regard to the other types of homicide prohibited by law, and it is only those unfortunate enough to have the victim die who can be tried for homicide in any degree.

■ Appellant's most potent argument is addressed to the proposition that the prosecutor should not be given a choice of whether to proceed under a felony statute or under a misdemeanor statute under the same set of facts. We agree that this may tend to deny to defendant and others in his class equal protection of the laws, if the same identical facts may be used in prosecutions under two completely integrated statutes, one a misdemeanor and the other a felony. Automobile homicide encompasses a new crime, one not previously a part of Utah law, and as such the facts that go to

make this crime are excluded from the old crime wherein they previously fell. The two statutes insofar as they relate to death by automobile by an operator under the influence are irreconcilable, and we hold that the last pronouncement of the legislature, the automobile homicide law, is controlling on prosecutions under the facts therein prescribed.

Involuntary manslaughter is defined[6] as: "The unlawful killing of a human being without malice * * * in the commission of an unlawful act not amounting to a felony * * *." However, if the legislature sees fit to single out the unlawful act of driving while intoxicated as being in a special classification, we think it is within their legislative prerogative to do so.

In our opinion the result is the same as if the legislature had amended the involuntary manslaughter statute by adding after the word felony the following:

"Provided, however, that if the unlawful killing of such human being results from driving an automobile while under the influence of intoxicating liquor or narcotic drugs he shall be deemed guilty of a felony and upon conviction shall be punished by imprisonment in the state penitentiary for a period of not less than one year nor more than 10 years."

5. State v. Barlow, 107 Utah 292, 153 P.2d 647.

6. Section 76-30-5, U.C.A.1953.

█ █ Appellant's contention that the act contains more than one subject not clearly expressed in its title is addressed to the fact that the act prohibits not only causing death while driving under the influence of intoxicating liquor but also causing death while driving under the influence of narcotic drugs or under other drugs to a degree which renders the driver incapable of safe operation of his vehicle; whereas the title prohibits only "causing death through the operation of a motor vehicle while intoxicated." However, the title does not have to be an index to the act. All that is required is that the subject matter of the act be reasonably related to the title and that all parts of the act be reasonably related to each other. It appears from both the title and the act itself that the act places penalties upon the causing of death through operation of a motor vehicle while the operator is not in possession of normal faculties and reflexes.

Defendant's last argument is addressed to the admission in evidence of the results of a blood test which he contends was taken from him without his consent. As to whether or not defendant was capable of consenting and did consent to the blood test, the record is conflicting. The state produced a signed consent allegedly signed by defendant, although defendant stated that he could not remember signing the docu-

ment. In addition he contends that if he did sign it he did so under the influence of drugs administered during the course of his treatment following the accident. However, we are of the opinion that there was sufficient evidence of consent for the court to allow the exhibit into evidence and to permit the jury to consider it.

Conviction affirmed.

CROCKETT, C. J., concurs.

WADE and McDONOUGH, JJ., concur in the result.

HENRIOD, Justice (dissenting).

I dissent, believing the legislation in question, as interpreted, paves the way for an accused to be placed twice in jeopardy [1] and represents class legislation.[2] It hands a prosecutor a double-barreled shotgun, either barrel of which could be discharged, followed by the other in the discretion of the prosecutor. Permitting this has been held to violate the equal protection clauses of both state and federal constitutions.[3]

Should the lesser offense be pursued, the prosecutor need but allege negligence. Drunkenness could be ignored as an element of the offense. Should the felony charge be pursued, both drunkenness and negligence could be alleged, but exactly the same facts could be proved. In the one case the accus-

---

1. Art. I, Sec. 12, Utah Constitution.
2. Art. I, Sec. 24, Utah Constitution.

3. State v. Cory, 1955, 204 Or. 235, 282 P. 2d 1054; State v. Pirkey, 1955, 203 Or. 697, 281 P.2d 698.

ed faces a misdemeanor and a maximum one-year jail sentence. In the other, he faces a felony and a maximum of 10 years in state prison. Although the same facts could be proved, the main opinion rejects any idea that the lesser offense is included in the greater, concluding that any negligent, drunk-driving homicide *must* be prosecuted under the automobile homicide statute.[4] How the fact of drunkenness could be determined before the complaint was filed in such case would have to be a matter of clairvoyance, since such fact would be one of those determinable by the jury, and to say that "the automobile homicide law is controlling on prosecutions under the facts therein prescribed" is somewhat misleading since such quoted statement seems to be predicated on the fact of drunkenness somehow being known before the prosecution.

Besides the double jeopardy aspect of this case it seems obvious to this writer that the legislation directly strikes at a class of misdemeanants who may have taken a drink or a drug, and because of that latter fact alone, can become felons. The injustice of the statute could be illustrated by the fact that under its terms a person running a red light at 90 m. p. h., who had not had a drink, but who kills another, faces but a misdemeanor and a year in jail, while one who

may not have thought of voluntary intoxication, at 10 m. p. h. may kill some one after leaving his doctor's office and after having had administered to him a drug for some ailment or other which actually but unwittingly made it unsafe for him to drive, would face a felony and a maximum of 10 years,—the statute not requiring any intentional or voluntary self-administration of drink or drug.

The main opinion's answer to all this, it would seem, is represented by a purported analogy to the effect that the statute here is not unlike one that punishes A who shoots intending to kill B, but kills C. The comparison offends logic, in my opinion, and is no analogy at all. There might be analogy if a statute punished A if he shoots, intending to kill B, buts kills C, *providing A was either drunk or drugged.* Besides, and parenthetically, gunman A had a real criminal intent to kill, whereas an intoxicated driver seldom, if ever, intends to hurt any one save himself.

The decision in this case meets the class legislation problem by the simple explanation that "this court has held that all that is required is that the statute apply equally to all members in the class and that as long as there is a valid reason for a classification by the legislature, their determination of the

4. Although we have held the identical facts which must be proved under the automobile homicide act constituted an offense under the voluntary manslaughter act. State v. Capps, 1947, 111 Utah 189, 176 P.2d 873; State v. McQuilkin, 1948, 113 Utah 268, 193 P.2d 433; State v. Read, 1952, 121 Utah 453, 243 P.2d 439.

320

class will not be disturbed." This statement begs the question.

First: Who are the members of the class here? They are a class of misdemeanants within a class of misdemeanants. They are the drunk misdemeanants. One wonders if the main opinion would conclude as it does if the legislature had classified those subject to the act as being male drinkers who were negligent and who could not safely drive.

Second: What is the so-called "valid reason for the classification?" What about the man who drives through the red light at 90 m. p. h.? Is he potentially any the less dangerous than the man driving home from the doctor's office,—or even the self-administered drunken driver?

The decision disposes, by way of generality, of the important question as to the wide, disparate inconsistencies between the two statutes and their penalties by saying that "automobile homicide encompasses a new crime, one not previously a part of Utah law, and as such the facts that go to make this crime are excluded from the old crime wherein they previously fell." It then says that it is as though the legislature had amended the previous act by adding the word "provided," followed by the automobile homicide act as now written. The quoted statement is true only if enough of us say so, but there is no logical reason why it should be true and there is no authority in the main opinion to support it. The legislature did not seem to think it was true else it would have said so, and furthermore and significantly it did not adopt the simple device of using the word "provided" and then amending the previous act. More than one reason for such deliberate abstention can be called to mind. Had the legislature used such device it would then seem inescapable that the lesser crime would have been included in the greater, an idea rejected by the main opinion.

It seems to me that under the conclusions and reasoning of the main opinion, these absurd results could evolve: If one is prosecuted under the felony statute which, says the opinion, "is controlling * * * under the facts therein prescribed," a finding that the accused was not drunk or drugged, although negligent, would require an acquittal, but would not preclude another prosecution under the involuntary manslaughter act, since the decision elsewhere takes the position the latter is not an included offense. If one be prosecuted first under the involuntary manslaughter act and is found to be both negligent and drunk, it would seem that he should be acquitted, since the main opinion says "the automobile homicide law *is controlling* on prosecutions under the facts therein prescribed." Thereafter it would seem that the accused might be prosecuted under the automobile homicide act if the court, as it seems to say, considers there is no double jeopardy problem.

In my opinion, the statute obviously strikes at but one type of misdemeanant. A drunk or drugged driver becomes a felon while all his fellow misdemeanants,—the speeders, the reckless ones, the willful and malicious ones, the hot-rodders, the daredevils, the wrong side of the roaders, the drivers with revoked licenses, the drivers who cannot obtain licenses because nature itself made them "incapable of safely driving a vehicle," and many other types of "classes" showing incapacity to drive safely need fear no more than a misdemeanor and a year in jail, while their brethren with the baited breath get the book.