**Gary CHRISTMAS, a Minor, by his Father and Next Friend, William R. Christmas, Plaintiffs,**

**v.**

**The EL RENO BOARD OF EDUCATION, INDEPENDENT SCHOOL DISTRICT NO. 34, Leslie F. Roblyer, as Superintendent of El Reno Public Schools, and Jerry Hutchison, as Principal of El Reno High School, Defendants.**

**No. Civ-70-263.**

United States District Court,
W. D. Oklahoma.

June 4, 1970.

Merton M. Bulla and Philip F. Horning, Oklahoma City, Okl., for plaintiffs.

Richard M. Fogg, of Fogg & Fogg, El Reno, Okl., and Harvey L. Harmon, Oklahoma City, Okl., for defendants.

## PRELIMINARY STATEMENT

BOHANON, Chief Judge.

The complaint in this case was filed on May 21, 1970 and the attorneys for the defendants accepted service of the complaint and entered their appearance on the same day.

The parties, through their counsel, appeared before the court on May 21, 1970, upon plaintiffs' request for a Temporary Restraining Order. Defendants orally moved to dismiss the case for want of jurisdiction and further urged the court to abstain from exercising jurisdiction on the grounds that there was no claim or showing that speedy and adequate relief could not be afforded in the state courts. Both issues raised were overruled and the court set the matter for trial on all issues at 10:00 a.m., May 22, 1970, with the agreement of all parties.

The complaint alleged plaintiff was being unlawfully prohibited by acts of the defendants, in their official capacities, from participating in a high school commencement ceremony and the receipt of a "diploma" at said ceremony. The ceremony was scheduled for Sunday, May 24, 1970 at 2:00 p.m.

The complaint requested injunctive and declaratory relief on claims of violation of the first, fourth, fifth, eighth, ninth, tenth, and fourteenth amendments to the Constitution of The United States and jurisdiction was invoked under 28 U.S.C. §§ 1343, 2201, 2202, and 42 U.S.C. §§ 1981, 1983, and 1975.

Plaintiff alleged his civil and constitutional rights would be violated to his irreparable injury if defendants were permitted to continue to enforce regulations concerning the dress and grooming required for participation in the scheduled ceremony. More specifically, plaintiff complained of the application to him of the regulation that the hair of male students shall not cover their ears, eyes or collar.

At the commencement of the trial on May 22, 1970, defendants renewed their jurisdictional objections which the court took under advisement and the trial proceeded on its merits. The plaintiff introduced his evidence and rested and the defendants again renewed their jurisdictional objections and alternatively moved to dismiss the action upon the grounds that the evidence failed to present any claim upon which relief could be granted. The court took these motions under advisement.

Thereupon the defendants presented their evidence and both parties rested.

## FINDINGS OF FACT

1.

The plaintiff is an 18-year old white male student at El Reno High School, El Reno, Oklahoma, and has regularly attended classes since September, 1969 when he enrolled as a senior.

2.

The evidence is undisputed, as defendants' Exhibit "1" shows, that plaintiff was regularly graduated as of May 22, 1970, ranking 173rd in a class of 190, and was furnished a certificate of graduation and transcript in exactly the same form and bearing the same date as every other member of the graduating class.

3.

The certificate of graduation and accompanying transcript is the only officially recognized document or record evidencing that plaintiff or other students are graduates. It serves as the only permanent school record and certified copies are furnished to institutions of higher learning or to others on request.

4.

In the El Reno school system a diploma is an unofficial document presented in a post graduate ceremony afforded, on a student option basis, to those who have already graduated. No records are made or kept as to either those students who attend the ceremony, or who receive diplomas at the ceremony. The ceremony is held on the Sunday following

official graduation and is similar in many respects to post graduate baccalaureate ceremonies held by various churches in El Reno. Participation in either ceremony is purely by the voluntary choice of the graduates with those in charge of the ceremony establishing prerequisites for those desiring to participate.

### 5.

The El Reno School System has for a period of at least eight years maintained a consistent and uniform policy with regard to those students participating in commencement and public ceremonies or in other extracurricular activities. The administrative directive implemented on March 2, 1970 was the codification of a long standing policy of the El Reno School System. The constituent hair regulation of the Dress Code relating to public display, disruption, public performances and ceremonies has been in effect and uniformly enforced for eight years or more.

### 6.

Plaintiff's hair, when he presented himself for enrollment in the early part of September, 1969, was of such a length that it violated the regulation that the hair of male students must not cover the eyes, ears or collar if the student desired to participate in commencement and public ceremonies or other extracurricular activities. Plaintiff was advised of the regulation and specifically told at the time of his enrollment as a senior that he would be unable to participate in the post graduate commencement ceremony at which diplomas are received or other extracurricular activities and ceremonies unless his hair was cut to conform with the regulation. Plaintiff was again so advised in October, 1969; November, 1969; April, 1970; and in May, 1970 at times when he made inquiry or the subject came up in connection with other matters.

### 7.

Plaintiff's mother, who was present with her husband and son at the counsel table throughout the entire trial, was promptly told of the school's requirements of dress, attire and appearance for participation in the post graduate commencement ceremony in early September, 1969; late November, 1969; December, 1969; and again by a letter dated May 7, 1970, which was introduced in evidence by plaintiff. She was fully aware for almost eight months before this suit was filed that unless plaintiff's hair was cut above his eyes, ears and collar he would not be eligible to participate in the subject ceremony.

During the early part of December, 1969 plaintiff's mother went to the high school principal's office and requested the aid of the high school administrative staff to assist her in getting the plaintiff interested in extracurricular activities so that plaintiff would decide himself to get his hair cut. It was suggested that if plaintiff would present himself to the high school golf coach during the spring of 1970 he might be eligible to participate with the golf team if his grades improved; and in such a situation plaintiff would probably decide on his own to have his hair cut. Plaintiff never showed any inclination to or interest in participating in golf or any supervised extracurricular activities and ceremonies.

### 9.

About two weeks after plaintiff's mother had sought the help of the school administrative staff to arrange a situation or activity whereby plaintiff would decide on his own to have his hair cut, she called defendant Jerry Hutchison, the high school principal, and told him that she would see to it that plaintiff would have his hair cut prior to the commencement ceremony or "he would have to find some place else to live."

### 10.

On April 21, 1970 plaintiff who had not yet cut his hair came to defendant Hutchison's office and again asked the principal whether or not he would be able to participate in the post graduate commencement ceremony. Mr. Hutchison again, as he had often done over the

preceding eight months, advised plaintiff that he would not unless he got his hair cut so that it would not cover his ears, eyes or collar. The plaintiff then requested a hearing before defendant Leslie Roblyer, superintendent of schools. The hearing was held on May 5, 1970, and after the hearing defendant Roblyer informed plaintiff that the principal's ruling was in accord with the policy and regulations of the El Reno Board of Education. On May 19, 1970, pursuant to the request of his attorneys, plaintiff, his mother, father and his attorneys appeared before the El Reno Board of Education appealing the decision of the principal and superintendent. After the hearing, on May 20, 1970, plaintiff's attorneys were advised that the school board had upheld the rulings of the superintendent and principal. This suit followed.

11.

Plaintiff admitted in his own testimony that he had had several fights both on and off the school premises, and acknowleged that his hair was a disruptive influence in the school system during the year. Other students had forceably attempted to cut plaintiff's hair. Plaintiff in his direct testimony admitted that his presence and participation in the scheduled ceremony would be a disruptive element and might cause trouble or a disturbance.

12.

After his enrollment in September of 1969, the plaintiff, in October of 1969, presented to the student council a resolution calling for student participation in a moratorium protesting the involvement of The United States in the Vietnam war. The student council rejected his proposal. Later in the same month, the plaintiff and a few other students appeared in the office of the high school principal protesting the school dress code, and presented a proposal for an "underground" student newspaper. He was advised by the high school principal that the dress code would continue unchanged and that if the plaintiff had an opinion for publication, he should present it to be published in the school newspaper, which is published weekly as a regular part of the El Reno Daily Tribune during the school year. The plaintiff and two other students wrote an article which was subsequently published in the school newspaper concerning The United States' involvement in Vietnam. Plaintiff admitted that he had never presented any article or publication for public presentment in the school paper which was turned down. The plaintiff and other students were also advised at the meeting in October of 1969 that there would be a patriotic Veterans' Day assembly on November 11, 1969, and that if he or any other students objected to the assembly they should advise the school administration so arrangements could be made to have a supervised classroom for such students during the assembly. The plaintiff attended the assembly. On the day of the assembly and a few days prior thereto, the plaintiff wore a black arm band. The plaintiff admitted that he had never been refused the right at that time or thereafter to wear a black arm band. The evidence was undisputed that some students during the assembly turned their backs during the salute to the American flag and it was shortly after the assembly that the plaintiff was involved in several fights.

13.

It was uncontradicted that the principal and school administrators feared for plaintiff's safety, and the principal or vice principal at each change of classroom by plaintiff made themselves conspicuous by being near plaintiff in the school's hallways to prevent fights or disturbances involving plaintiff. Despite these precautions, in at least one instance, a fight in a hallway resulted in the presence of the principal which he was quickly able to stop. Plaintiff consistently refused to listen to suggestions by school counselors that his difficulties with other students might lessen if he cut his hair. Plaintiff testified he thought he had a "personal

right" to wear his hair as long as he wanted.

### 14.

The defendants have been more than reasonable and fair with plaintiff in all respects. He has not been, although the circumstances might warrant it, disciplined, punished or deprived of any right or educational opportunity. He has been permitted to attend and participate in all classes, to regularly graduate, and he has been awarded his certificate of graduation. As is shown by defendants' Exhibit "1", neither the certificate, nor the accompanying transcript, contain any notation or language indicating his conduct or grooming.

### 15.

The evidence in this case shows beyond any question that the defendants have more than justified the validity and reasonableness of regulations and their uniform enforcement, and accordingly defendants have met their substantial burden of justification. The plaintiff has not been deprived of any educational opportunities or his rights to express his opinions symbolically, orally or in writing.

### 16.

The hearings, appearances and consideration given plaintiff afforded all of the regular standard procedural and substantive due process rights to which he is entitled, and he has not been denied any basic or fundamental right.

### 17.

The School Board and its administrative staff have applied the regulations admitted into evidence with consistency and uniformity as the evidence clearly shows, and has not in any way or degree acted unreasonably, arbitrarily, capriciously or discriminatorily. The regulations themselves are reasonable and rational, and represent the expressed judgment of the duly constituted school board whose authority and duty to make such reasonable regulations clearly appear. The School Board by its administrative staff has clearly demonstrated the need and necessity for rules and regulations of this type, and this court finds that in this case the regulation bears a substantial relation to the legitimate concerns of a public educational institution.

### 18.

The evidence clearly shows that the only obstacle between plaintiff and participation in the post graduate ceremony and receipt of a "diploma" is the length of his hair, and the defendants' testimony was that plaintiff could, if he chose to do so, participate in the scheduled ceremony, provided his hair was not over his eyes, ears or collar and he appeared at the ceremony dressed and groomed according to the other requirements of the ceremony.

### 19.

It should be noted that the case before the court does not involve any refusal to admit or enroll a student in a public school because of a school dress code. Nor does this case involve the suspension of a student from class attendance because of any school regulation. No educational rights are, or have been denied, and plaintiff having been regularly and formally graduated has been afforded all of the rights and privileges to which he is entitled.

## CONCLUSIONS OF LAW

### 1.

While there is persuasive authority to the contrary, the court concludes it has jurisdiction over the parties and subject of this case. Ferrell v. Dallas Independent School District (5 Cir., 1968) 392 F.2d 697, cert. den. 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125. But see: Schwartz v. Galveston Independent School District (S.D.Tex.1970) 309 F. Supp. 1034 and the exhaustive list of authorities cited therein.

### 2.

While the evidence of this case clearly shows that the defendants could have refused to enroll plaintiff, or have suspended him from attendance, this case involves only the clear and unquestioned

right and responsibility of a School Board to promulgate and enforce rules and regulations consistent with the legitimate concerns of a public school system, subject only to constitutional review. Ferrell v. Dallas Independent School District, supra.

**3.**

Involving as it does, only the limited and narrow question of whether plaintiff has constitutional or other rights to attend an elective post graduate ceremony without complying with the reasonable dress and grooming requirements established for that and other extracurricular activities and ceremonies, this case is more nearly akin to cases where a student claims a right to play football or participate in a parade of a school band in violation of rules or without the proper band uniform and required grooming. Estay v. LaFourche Parish School Board (La.App., 1969) 230 So.2d 443.

**4.**

The regulations under the evidence in this case, even if subject to the rule requiring a substantial burden of justification to sustain them, are reasonable, uniformly enforced, do not unlawfully or invidiously discriminate, and the evidence shows valid and compelling reasons for their enactment and enforcement. Neither plaintiff's constitutional nor civil rights have been violated. Ferrell v. Dallas Independent School District, supra; Crew v. Cloncs, (S.D. Ind.1969) 303 F.Supp. 1370; Snowden v. Hughes (1944) 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497; Byrd v. Sexton (8 Cir., 1960) 277 F.2d 418; and Leonard v. School Committee of Attleboro (1965) 349 Mass. 704, 212 N.E.2d 468, 14 A.L.R. 3rd 1192.

**5.**

While waiver, laches or estoppel, or a combination of them appear to be a clear bar to any relief under the evidence in this case, the court having reached its decision on other grounds does not here pass upon their applicability at this time.

**6.**

Plaintiff, having shown no violation of any of his rights, is not entitled to declaratory or injunctive relief and judgment, together with costs, will be entered accordingly.