Billie K. FREEMAN, Guardian of Terry Freeman, Plaintiff,

v.

Almon FLAKE, Principal of Viewmont High School, the Board of Education of Davis County School District, and Irvin R. Cleverly, Morris Hansen, Henry E. Peterson, Lynn W. Burton, and Harold J. Gailey, members of the Board of Education of Davis County School District, and Bernell Wrigley, Superintendent of Davis County Schools, Defendants.

Vyron Randall OSTLER, a minor, by Stephen B. Ostler, his father and natural guardian, Plaintiff,

v.

Bernard YOCOM, Lawrence L. Cook, Lynn Wilcox, and the Board of Education of Davis County School District, Defendants.

Mark Charles SIMMONS, by and through his guardian Robert C. Simmons, Plaintiff,

v.

Clifton PYNE, Principal of Orem High School, and the Board of Education of Alpine School District, and Dr. Boyd J. Larsen, Frank C. Greenwood, Eli C. Clayson, Dr. R. Phil Shumway, Harvey E. Smith, members of the Board of Education of Alpine School District, Defendants.

Nos. NC 36–70, 37–70 and 249–70.

United States District Court,
D. Utah, N. D.
Oct. 2, 1970.

**532**

James N. Barber and Richard M. Day, Salt Lake City, Utah, for Terry Freeman and Mark Charles Simmons.

Frank S. Warner, Ogden, Utah, for Vyron Randall Ostler.

Felshaw King, Clearfield, Utah, for Almon Flake and others and Bernard Yocom and others.

Harvard R. Hinton, Lehi, Utah, for Clifton Pyne and others.

CHRISTENSEN, District Judge.

The above-entitled cases, consolidated for trial because they involve common questions of fact and law, present questions concerning the power of school boards in the State of Utah, and school officials acting under them, to promulgate and enforce regulations dealing with the length of hair of students and related matters of appearance and grooming.

In No. NC 36–70, Freeman v. Flake, plaintiff, represented by his mother as guardian, is a student in Viewmont High School, one of the schools maintained and administered by Davis County School District, State of Utah. It is alleged that on or about September 17, 1970, the defendant Principal suspended or expelled this student preventing him from attending further classes, all without justification, legal excuse or opportunity for hearing, but because of the refusal of Terry Freeman to comply with the defendants' orders or regulations relating to the length or style of students' hair.

In NC 37–70, Ostler v. Yocom, the plaintiff was enrolled as a student in Sunset Junior High School, one of the junior high schools maintained and administered by the Board of Education of Davis County School District. It is alleged that on or about September 16, 1970, the defendant Yocom requested the vice-principal and the principal of this school to suspend or expel the plaintiff; and that the defendants have subsequently prevented plaintiff from entering or attending any classes at the Sunset Junior High School because of the plaintiff's refusal to comply with the defendants' orders or regulations relating to the length or style of hair.

In No. C 249–70, Simmons v. Pyne, similar allegations are made on behalf of Simmons.

█ The evidence shows that the students were suspended because of their refusal to comply with the regulations as to length of hair, that while Freeman was performing marginally otherwise, the suspension could not be justified on other grounds. Simmons and only to a lesser extent Ostler were considered good students aside from the problem involved here. The hair of all three was persistently maintained in a manner to clearly violate the requirements in question and abundant opportunity was afforded each to bring himself into compliance

before the suspensions. Freeman and Ostler have the opportunity of keeping up their school work through home teachers provided by the defendants during their periods of suspension. Simmons has now had his hair cut sufficiently to bring him into compliance with the regulation and is in school without abandoning his contention that his future conduct will be unconstitutionally restricted unless the regulation is declared invalid. I do not think that the case is moot for this reason. Ostler is the only one who gave any reason other than general ones for his resistance to the rules, claiming that long hair was necessary to cover a scar on his head. Personal inspection is convincing that the scar is covered equally well by length within the regulation. There is nothing in the evidence to suggest that this was his real reason for non-compliance or that if it was the school authorities would not permit any reasonable departure in view thereof.

Jurisdiction in each case here is claimed on the basis of 28 U.S.C. § 1343, 42 U.S.C. §§ 1983 and 1985, upon amendments I, IV, IX, and XIV of the Constitution of the United States, and upon 28 U.S.C. §§ 2201, 2202. This court does have jurisdiction over the subject matter of the actions and the persons of the parties.

In the first two cases venue is appropriately laid in the Northern Division of the District of Utah; and upon consolidation the third case was transferred, with the consent of the parties and pursuant to the rule of court, for disposition in the Northern Division in connection with the prior cases.

The cases initially came before the court on applications for restraining orders and preliminary injunctions pendente lite; but by reason of the urgency of an early determination, and in order to avoid duplication by separate hearings with reference to preliminary injunctive relief and upon the final merits, the parties have stipulated and the court has approved the hearing of the cases upon their final merits at this time, there having been a waiver of time for pleading and pre-trial discovery and a stipulation that except as indicated otherwise in the evidence the complaints in the cases may be deemed denied by the respective defendants.

Evidence has been taken over a period of three days; in addition pre-trial briefs and oral arguments of counsel have been considered. The court now considers itself fully advised and believes it essential in the public interest, for the welfare of the students directly involved and the student bodies of the schools generally to announce its decision without further delay.

Contending that each answer must be in the affirmative, the plaintiffs present the following questions for determination:

1. Whether requiring a student to conform to a regulation governing length or style of hair as a prerequisite to attending a public school violates his and his parents' fundamental rights of privacy guaranteed by the First Amendment and the "penumbra" of the First, Fourth, Ninth and Fourteenth Amendments to the Constitution of the United States.

2. Whether suspension or expulsion of a student from public school for wearing long hair denies him the freedom of expression guaranteed and protected by the First Amendment.

3. Whether suspension or expulsion of a student from public school for failure to comply with a regulation published or unpublished, governing the length or style of hair, violates the Due Process Clause of the Fourteenth Amendment.

4. Whether a regulation which prevents students from attending public schools solely because of the length of their hair is a violation of the Equal Protection Clause of the Fourteenth Amendment as an unreasonable classification.

5. Whether the regulation under which plaintiffs were suspended or expelled is unconstitutionally vague.

I have indulged a wide range of evidence in these cases to have assurance that no significant points are overlooked. The students involved and their witnesses, as well as the experts, have been permitted rather freely to express their opinions concerning the regulations in question, as well as general problems of student relationships and school administration.

With much of what has been said on behalf of each side, I can agree—the importance of individual liberty in schools as well as out, the requirement to observe constitutional limitations in school as well as out, the necessity of reasonable regulations to advance and to protect the learning process, the desirability of collaboration and mutual discussion in the formulation of school policies, the necessity of ultimate responsibility upon school administrators to administer and upon teachers to teach, the desirability that every student, without interference, receive in-school training with the maximum self-determination and liberty consistent with the functioning of a school, the learning process and the rights of others, and the necessity that those defying reasonable regulations not be permitted to break down school administration in perversion of their own attitudes and the destruction of a system indispensable to the discharge of the mission of the schools.

There is much in the testimony with which I do not agree. I cannot accept the contention that all people wearing long hair are mentally ill on the one hand, or on the other that they are as a general rule more creative or scholarly than those who do not. I do not agree that the function of a school is necessarily to teach the philosophy of the majority of the patrons of school, much less the philosophy of a minority of the patrons or of those who have no connection with its problems. It is questionable that there is any inherent or necessary correlation between long hair and improper conduct. There is evidence indicating that long hair creates negative attitudes if not opposition from the majority of students, that those with long hair tend to isolate themselves from the main stream of student activity and that long hair in the climate of the time is disruptive within the schools in question of proper school discipline and the learning process to an extent.

The experts and the evidence in general are in substantial agreement that beyond whatever excessively long hair indicates about the personal attitude and mind of individuals it has become within the fabric of our society a symbol of dissatisfaction and protest to which a substantial number of people, for reasons sufficient to themselves, respond and with which young minds in the process of resistance to authority are likely to identify without any real ideological view except the testing of parental or school authority. There seems to be a correlation between long hair and improper grooming aside from hair.

There was a sharp difference of opinion as to the necessity or benefits of the regulations in question in these or other schools among the witnesses, but those directly connected with the schools and school districts in question were in substantial agreement that they were beneficial if not essential, and there is indication that they have the broad support not only of the patrons and administrators but of the students therein.

It should be noted that in what has been said hereinbefore and in the discussion which follows the term "long hair" generally is used to refer to hair of a junior or senior high school male student permitted to grow substantially beyond the limits referred to in the regulation in question. That is not to say that hair within the limits may not be considered "long", depending upon the viewpoint. And I am impressed with the statement of one of the witnesses that between close shaven hair and the limits of the regulation there is a considerable leeway for individual taste (including what may be regarded by many as long hair for male students). And I must emphasize that anything which has been or will be said about "long hair" in no way is in-

tended as a moral or ideological judgment. We are not concerned with any point except the right of junior or high school students to wear long hair beyond and in defiance of school regulations, and we are not concerned necessarily with this question in the abstract but with reference to the specific regulations involved here and under the circumstances shown by the evidence.

While the applications vary somewhat among the cases, the regulation of the Davis County School Board on the subject in question is characteristic and raises all of the issues with which we are concerned in these cases:

"The Board of Education of the Davis County School District, in support of the aims of public education, recognizes that standards of proper dress and grooming seriously affect the behavior of students attending school. Experience has demonstrated that the atmosphere for a good learning situation and a wholesome academic environment is improved when proper dress, proper grooming and when proper standards of decorum and discipline are adhered to by the studentbody. The Board of Education, therefore, strongly urges that every effort be made to promote and maintain such personal maturity and development.

"As a student seeks purposely to draw attention to himself through oddities of dress and styles, he is usually displaying a false sense of values and will, quite likely, not fulfill himself academically in his school and his studies. Furthermore, experience indicates that there are sanitation and safety factors directly related to proper dress and grooming. Furthermore, experience indicates there is a real and reasonable connection between proper dress and grooming and the successful operation of the educational system with the maintenance of school discipline. Therefore, the Board of Education of the Davis County School District sets the following standards for school dress and appearance:

"1. All students shall maintain their hair in a clean and well-washed manner and male students shall comb and wear their hair so that it does not hang below the collar line in the back nor hang over the ears on the side and their hair must be above the eyebrows in the front. Male students shall be clean shaven and their sideburns shall not be lower than the bottom of the ear and mustaches properly trimmed.

"2. All students shall be required to wear clean clothing and no immodest form or manner of dress shall be allowed. Shorts and other similar attire shall not be worn nor shall any clothing be worn which displays obscene or suggestive words or pictures nor shall any clothing be worn which is so extreme or odd that it may disrupt or tend to disrupt or interfere with school functions. School officials may require students to wear certain types of clothing for health or safety reasons in connection with certain specialized activities.

"If a student does not comply with these regulations upon direction of the principal, he may be suspended from school until such time as he does comply. Any student so suspended shall in any event be required to bring his parents or guardian to school for a conference with the principal before reinstatement at which time the principal may decide to reinstate the student or to continue the suspension.

"In the event the principal decides to continue the suspension after having met with the parents or guardian, the student, through his parents or guardian, shall have a right to appeal the decision of the principal to the Director of Pupil Personnel of the Davis County School District within Ten (10) days after the decision of the principal. The Director shall thereafter set a time for conducting a conference at which time the student, parents or guardian shall be given a hearing. At the conclusion of such informal hearing the Director shall either affirm

the decision of the school principal or order the student reinstated.

"If the Director affirms the decision of the school principal, the student, through his parents or guardian, may appeal in writing to the Superintendent of Schools within Ten (10) days from the date of such decision. The Superintendent of Schools as the Executive Officer of the Board of Education shall thereafter review the decision of the Director of Pupil Personnel, with or without holding a hearing, and thereafter render a decision affirming the decision of the Director or ordering the student reinstated.

"At all times during the aforementioned appeal procedures, the student shall remain on suspension unless otherwise ordered by the Superintendent of Schools."

The Alpine School District Regulation is substantially the same with reference to length of hair, although varying in other respects. They were put in their present form shortly before the suspensions in question, but their content and substance have been in force and well understood over a substantial period of time theretofore.

■ There is no question of the statutory and inherent right of school boards within the State of Utah to promulgate and appropriately enforce reasonable regulations concerning the conduct, deportment, and grooming of students attending public schools placed under their administrative control, providing that such regulations do not offend rights guaranteed by the Constitution of the United States. Starkey v. Board of Education of Davis County School District, 14 Utah 2d 227, 381 P.2d 718 (1963); Beard v. Board of Education, 81 Utah 51, 16 P.2d 900 (1932); Davis v. Ogden City, 117 Utah 315, 215 P.2d 616 (1950); State v. Twitchell, 8 Utah 2d 314, 333 P.2d 1075 (1959).

■ The point has been advanced, more by way of suggestion in the pleadings or in inferential argument rather than solidly set out, that some problem

of procedural due process is involved. The evidence and the final statement of plaintiffs' counsel have set such point at rest, for it now seems clear that the students involved were well aware of the regulations, had been repeatedly admonished in view of them, had, with the knowledge and acquiescence, if not support, of their parents elected to defy them and had rejected the known and established system of review through higher administrative authority. I do not believe that failure to exhaust administrative remedies would bar relief here under the civil rights acts but I am also of the opinion, confirmed by the statements of counsel, that procedural due process is not in issue.

Whatever uncertainty might exist concerning the term "proper grooming" in other respects, this is not involved in the present cases; because the school authorities acted upon the express requirements of length of hair, the validity of the regulations with respect thereto is the only point here.

■ I must reject the argument advanced by counsel for one of the plaintiffs that the regulation is uncertain or overly broad. General reference to "proper grooming" is not in question now. Indeed, the regulation as to hair is explicit, and if there were any way to draw lines, the lines have been rather specifically drawn in language that no student could misunderstand. And if a line is permissible someplace, it seems that the line drawn of not below the collar, not over the eyes, or not over the ears, is as manageable and reasonable as any other having practical significance. Thus, I hold that the regulation is not void on its face for uncertainty or overbreadth and that we must look further into its nature and effect in order to determine its constitutionality.

■ Nor need we pause long at the contention that length of hair beyond the regulation is in itself a form of symbolic speech which with especial sensitivity beyond ordinary respect for constitutional limitations must be protected under the First Amendment. It is ar-

gued that such conduct, like words, can be an expression or dramatization of a moral, sociological, political, religious or ideological viewpoint. However the argument may be sustained in another context, more is required here than counsel's suggestion that the plaintiffs perhaps were indicating a profound or hidden ideological view unknown even to themselves and thus that the right of symbolic free speech might be involved. The main reason assigned by the plaintiffs for resistance to the regulation was that they "wanted" to have longer hair, they "liked" it and they thought it was their "right".

Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), does not suggest that this is "symbolic, free speech". On the contrary, this case states, among other things:

"The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment. Cf. Ferrell v. Dallas Independent School District, 392 F.2d 697 ([5th Cir.] 1968); Pugsly v. Sellmeyer, 158 Ark. 247, 250 S.W. 538 (1923). It does not concern aggressive, disruptive action or even group demonstrations. Our problem involves direct, primary First Amendment rights akin to 'pure speech.'"

And in United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968), the Supreme Court said:

"We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."

As noted by Judge Doyle in Brick v. Board of Education, Sch. Dist. No. 1, Denver, Colo., 305 F.Supp. 1316, (D. Colo.1969):

"This does not mean though that conduct of the kind here in question does not have any constitutional protection. It is protected to the extent that the due process clause of the Fourteenth Amendment prohibits the arbitrary deprivation of liberty. This right is, however, both substantively and procedurally distinct from the paramount right to freedom of speech * * * Legislative power in this area is circumscribed to a much greater degree than in the area of conduct, and courts require that the state come forward with the evidence that such a regulation is necessitated by a compelling state interest before its constitutionality will be sustained * * * On the other hand, the role of a federal court in reviewing claims that state regulations of liberty violate substantive due process is relatively narrow."

In Tinker v. Des Moines Sch. Dist., *supra*, neither the trial court nor the Supreme Court reached the question whether even in the sensitive free speech area a regulation was justifiable in circumstances similar to the present ones before the court.

If we are to extrapolate a result from *Tinker* and the cases dealing more precisely with conduct as distinguished from speech, in the context of the evidence before this court, it would be that school board action reasonably designed to foster legitimate educational aims and to promote the learning process, order or safety of students will be sustained if not arbitrary or capricious. The state in the area of regulation of grooming and in connection with its broader but related functions is advancing a vital state interest. Those activities which have a disruptive effect on the learning atmosphere in public schools are not improper subjects for regulation.

The evidence in my opinion clearly shows that not only were the regulations with regard to hair length adopted after careful consideration and in the intended best interest of the educational process, but they were based upon reasonable findings supported by the evidence tending to indicate to the reasonable mind that such regulations would minimize disruption and distraction in the school, promote order and safety, re-

direct the attention of students from an obsession with, or reaction against, mere hair length—as an achievement or a counter-achievement—would direct attention to more productive activities, and would minimize the danger of distraction from educational pursuits. Others considering such evidence might come to a different conclusion but this does not destroy the underpinnings of the boards' determinations, since those boards, rather than others, are charged with the legal responsibility of adopting regulations consistent with constitutional limitations and the dictates of reason. I reject any broad notion that within those limitations federal judges are established as overseers to regulate the exercise of state discretion as well as to see that constitutional limitations are not breached.

Under circumstances having some relationship to the present cases, many courts have sustained similar regulations. Leonard v. School Committee, 349 Mass. 704, 212 N.E.2d 468, 14 A.L.R.3d 1192; Davis v. Firment, 269 F.Supp. 524, (D.C.La.), affd., 408 F.2d 1085 (5th Cir. 1967); Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir. 1968); Akin v. Board of Education of Riverside Unified School District, 262 Cal.App.2d 161, 68 Cal.Rptr. 557 (1968); Brick v. Board of Education, Sch. Dist. No. 1, Denver, Colorado, 305 F.Supp. 1316 (D.C.Colo.1969); Jackson v. Dorrier, 424 F.2d 213 (6th Cir. 1970); Stevenson v. Wheeler County Board of Education, 426 F.2d 1154 (5th Cir. 1970); Neuhaus v. Torrey, 310 F.Supp. 192 (D.C.Cal.1970); Farrell v. Smith, 310 F.Supp. 732 (D.C.Maine 1970); Crews v. Cloncs, 303 F.Supp. 1370 (D.C.Ind. 1969); Pritchard v Spring Branch Independent School District, 308 F.Supp. 570 (D.C.Tex.1970); Wood v. Alamo Heights Independent School District, 308 F.Supp. 551 (D.C.Tex.1970); Christmas v. El Reno Board of Education, 313 F.Supp. 618 (D.C.Okl.1970). Other courts have reached contrary conclusions on facts which bear some similarity to the present cases. Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970); Westley v. Rossi, 305 F.Supp. 706 (D.C.Minn. 1969); Griffin v Tatum, 300 F.Supp. 60 (D.C.Ala.1969), affd, in part, 425 F.2d 201 (5th Cir. 1970); Olff v. East Side Union High School District, 305 F.Supp. 557 (D.C.Cal.1969); Richards v. Thurston, 304 F.Supp. 449 (D.C.Mass.1969), affd., 424 F.2d 1281 (1st Cir. 1970); Calbillo v. San Jacinto Junior College, 305 F. Supp. 857 (D.C.Texas 1969); Lucia v. Duggan, 303 F.Supp. 112 (D.C.Mass. 1969); Finot v. Pasadena City Board of Education, 250 Cal.App.2d 189, 58 Cal. Rptr. 520 (1967). Counsel have not reported nor have I been able to find that either the United States Court of Appeals for the Tenth Circuit or the Supreme Court has yet ruled upon a case closely in point.

I am of the opinion that the line of authority first cited represents the best if not the majority view on the question.

I shall not attempt here to re-examine beyond what I have said the detail of reason going into the cited cases, I conclude in view of my evaluation of those reasons, the evidence before the court, and the controlling principles of law, that the enforcement of the regulations by suspension pending compliance in the context of these cases does not violate either the students' or the parents' fundamental rights of privacy, does not deny freedom of expression guaranteed and protected by the First Amendment, does not violate either procedural or substantive due process or the equal protection clause of the Fourteenth Amendment, that the regulations are not unconstitutionally vague, or overly broad, and that there is no basis for enjoining their application and enforcement in the schools involved here under existing circumstances.

Wherefore, this opinion being deemed sufficient as findings of fact and conclusions of law, pursuant to the requirements of Rule 52, F.R.Civ.P., it is now ordered that injunctive relief should be, and it is hereby, denied, and the actions of the plaintiffs dismissed, without costs.